### In re BRENER.

(District Court, S. D. New York. December 27, 1907.)

BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF DISCHARGE—DEBTS CREATED BY FALSE STATEMENTS.

The omission by a bankrupt from a financial statement in writing made by him, on which he obtained goods on credit, of any reference to a large sum which he owed to relatives for borrowed money, shows a fraudulent intent, and debars him of the right to a discharge under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), without regard to the amount of the loss thereby occasioned to the objecting creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 760; Dec. Dig. § 407.*]

In Bankruptcy. On application for discharge.

Sidney Rosenbaum, for bankrupt.

James, Schell & Elkus (R. P. Levis and J. N. Rosenberg, of counsel), for objecting creditors.

HOUGH, District Judge. What is meant by the "personal equation" mentioned in the referee's report is clearly shown by reading Brener's speech toward the close of his examination on application for discharge. Even as read, it shows a man intelligent, yet illiterate, of great business aptitude, yet ignorant of some elementary conditions of all successful business, bold enough to pay pressing creditors for the sake of maintaining an appearance of credit, yet not brave enough to bow his neck to the inevitable in the interest of creditors who were not harassing him. The tale excites some sympathy, and, when coupled with an attractive demeanor and a manner of speech expressive of some sense of wrong, might well excite much sympathy.

I am always loth to interfere with any finding of fact by an officer who heard and saw witnesses, but there are some incontrovertible facts proven in this case, and some findings of fact by the referee which in my judgment require that Brener be refused his discharge. It is reported, after a view of the witness, that Brener is an intelligent man,

and that the payments made to family creditors on the eve of bankruptcy were made under the apprehension of impending financial trouble. This clearly shows that Brener, though he did not keep his own books, and perhaps was not capable of reading them, was thoroughly aware of the fact that he owed considerable sums of money to persons for whom he entertained particular regard and whom he was prepared to prefer, and did prefer when trouble came. I think the testimony also shows that he was indebted to persons of this class in the sum of approximately $6,000 on December 20, 1902, the date as of which his statement was made up.

An intelligent man, acquainted with and reasonably successful in business, for whom a trial balance was prepared, must have known whether or not in that trial balance any borrowed money figured as a liability. The statement of assets and liabilities upon which his creditors rely is confessedly but a transcript of his trial balance. It specifically calls for a statement of borrowed money, and is a deliberate assertion that he owed nothing for borrowed money. It is a notorious fact, of which I think the court may take judicial cognizance, that intending vendors of merchandise are peculiarly sensitive regarding debts for borrowed money. They are apt to look into them with a microscopic eye. They induce suspicion of themselves, and very justly so; for it is also a matter of common knowledge that such liabilities are earliest discharged, if the creditors are related by blood or marriage, when doubt arises as to ability to pay all creditors. It may be, and I think it was, quite true that, if Brener's statement had shown $6,000 less net worth than it did show, his line of credit would not have been curtailed by those persons with whom he was accustomed to deal; but it does not follow that, if his net worth had appeared to be $6,000 less than was stated by reason of borrowed money, intending creditors would have felt as much confidence as they did feel, or as much as they would have felt had his worth been decreased for any other reason. The padding of a statement by doubtful assets may be regarded as but an unconscious expression of undue hopefulness, and in an illiterate man may perhaps be looked upon with a benevolent eye; but the suppression of all indebtedness for borrowed money is, I think, a particularly flagrant form of material falsity, first, because it is a suppression of truth especially calculated to prevent further inquiry, and, second, because its omission is the omission of something particularly and always present in the mind of the debtor. It cannot be inadvertent. It must be deliberate.

I feel sure, therefore, that Brener permitted this statement to go over his signature with a deliberate intent to deceive, and to deceive upon a material point. This is the fraudulent intent referred to in Re Carton (D. C.) 17 Am. Bankr. Rep. 351, 148 Fed. 63; and, if the intent was fraudulent, it makes no difference how small is the loss occasioned to the objecting creditor thereby. It is enough if such creditor would not have extended the credit, had he known the truth; such truth being that there was not merely an overestimate of assets, but a deliberate suppression of a well-known liability.

For these reasons the discharge of Brener must be denied.