PIEPER et al. v. ELECTRO DENTAL MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

No. 198.

PATENTS—INVENTION—REGULATOR FOR ELECTRIC MOTORS.

The Pieper patents, No. 704,099, for electric motor regulation, and No 721,229, for a motor, are void for lack of invention; the only novel feature in the combinations shown being the application to the small alternating current fan motors of the existing art of the regulating shunt with varying resistance already in use in direct current dental motors, which did not involve invention.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree dismissing the bill in an equity suit brought for infringement of two patents. One patent is No. 704,099, issued July 8, 1902 (application filed March 24, 1899) to complainants for "electric motor regulation." The other is 721,229, issued February 24, 1903 (application filed September 20, 1901), to complainants for a "motor." The opinion of the Circuit Court will be found in 156 Fed. 672.

Charles Brown and F. F. Church (Church & Rich, of counsel), for appellants.

Howson & Howson (Charles Howson, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The specifications of the earlier patent state that the invention—

"relates to electric motors adapted for alternating currents and to certain improvements relating to and means for and method of controlling them, whereby they may be started with the necessary torque, and when the armature is under full speed it can be instantly stopped, and, if desired, its direction of movement reversed, without the use of clutches, brakes, or other mechanical holding devices. The invention, which is designed more particularly for small motors intended for operating dental engines or machines, where accurate speed regulation is the leading requisite, relates to alternating current motors of the direct-current type having usual laminated field magnets and the windings designed for a relatively high electro-motive force or relatively high self-induction, armature-coils designed for a relatively low electro-motive force or having a relatively low self-induction, commutator and commutator-brushes arranged at the neutral point, said field and armature windings being connected in series: and the novel features of the invention relate to the control of such motors at any speed and with or without a load by a permanent shunt around the armature, and the accurate regulation of the motor is accomplished by the manipulation of a variable resistance interposed in said shunt. * * * The function of the resistance in shunt with the armature of a series-wound motor of the direct-current type, which is wound as stated for alternating currents, is not only to maintain the voltage at the armature-terminals constant, but permits an armature winding of relatively low self-induction or few turns, which is necessary in an alternating-current motor of this type to prevent excessive sparking."

Eight claims are relied upon. It will be sufficient to quote two of them.

"1. The combination, in a motor for alternating currents, of field-windings, armature coils, commutator, and commutator-brushes arranged at the neutral point, all connected in series, as customary in constant-current motors, and a regulating device for controlling the speed of the motor consisting of a variable resistance permanently in shunt across the armature.

"2. The combination in a motor for alternating currents, of field-windings with relatively high self-induction and armature coils with relatively low self-induction, commutator and commutator-brushes arranged on the neutral point, all connected in series, as customary in continuous-current motors and a variable resistance in shunt with the armature."

The judge who heard the cause at circuit held this patent void for lack of patentable novelty. We are led to the same conclusion, not by any transactions in the Patent Office, nor by construing the language of the specification so as to find in it some "concession," which the patentee did not intend to make, but because of the disclosures of the prior art. The patent shows an alternating-current motor of the direct-current type, with field and armature wound so as to secure the differences in electro-motive force above indicated, with means for regulating speed, not mechanically, but by cutting in and out a series of resistances arranged in shunt with the armature. This precise combination in its entirety was novel; but mere novelty is not invention, when the teachings of the art would naturally lead one skilled therein to produce such a combination whenever an improvement of that sort was required.

We have from the complainants no history of the development of their improvement, and the date assigned to it is that of the application—March, 1899. At that time there were in existence electric motors for dental purposes in all respects, save as to details of winding, the same as the one in suit, operating by direct currents. There were also similar motors operated by alternating currents, and reg-

ulated as to speed by frictional attachments. There were also small motors for alternating currents, in which there was no regulation of speed, and which had the precise construction of laminated field and differing windings of field and armature that the patentees describe. These were used as fan motors. Quite possibly the patentees had never heard of them. It would seem from his prima facie testimony that complainant's expert did not know of them till the trial of this suit; but they are none the less a part of the prior art, to be referred to in testing the validity of the patent.

The direct current dental motors gave entire satisfaction and were capable of accurate and complete control in the manner indicated. It was not until the alternating current came into extensive use that there was demand for any other motor. When that time came it was necessary only to apply to the small fan motors the regulating shunt with varying resistances which was already in successful use in direct-current dental motors, without changing or modifying either element of the combination. Did this constitute invention? Would the means employed for regulating the alternating motors, so that their speed would be controlled when operating with or without load be obvious to one skilled in the art? That is a question which can be answered more satisfactorily by those so skilled than by one who is not. When we turn to the record, however, we find a difference of opinion. Defendant's expert insists that it was obvious. Complaints' expert that it was not. Both of them are gentlemen of eminence in their profession. Manifestly one of them only correctly answers the question, and the only thing possible for a court, itself without special technical knowledge of the subject, is to make a careful study of the testimony of both, and accept as controlling that which commends itself as the more persuasive. Upon such study of the testimony of both witnesses, we are of the opinion that the defendant's expert gives the correct answer. It is unnecessary to review in detail such testimony, which is extremely voluminous; but we may indicate a few circumstances which lead us to this conclusion.

Complainant's expert has much to say of the wide differences between direct and alternating currents; the management of the first being a relatively simple matter, while the actions which take place in motors of this type operated by alternating currents are exceedingly complex, so that one cannot say in advance just what will happen when using alternating currents, and certain results, which inevitably follow when using direct currents, do not follow when using alternating currents. It would seem, however, that this very uncertainty as to what would happen would be more likely to induce a skilled person, who had before him the problem of regulating one of these small fan motors so as to make it available for dental purposes, to try the resistance shunt, which already worked well with direct current dental motors. If there is so much uncertainty as to what will happen when alternating currents are applied to direct-current devices, the less chance there is that the "teachings of the art" would turn the skilled person away from what to an unskilled person would seem to be an obvious experiment.

It is argued that there was a long-existing prior demand for alternating-current dental motors, speed-controlled as the Pieper mo-

tors are. Satisfactory evidence of this would go far towards indicating patentable invention; but the evidence produced is not satisfactory. Several circulars and advertisements of dental supply houses were put in evidence. They contained statements to the effect that such a motor could not be produced, though efforts were being made to devise one. But the documents are competent only to show that such statements were made, not that the statements were true. For aught that appears they may have been made by dealers who had other types of dental motors which they wished to sell. There is no proof as to what efforts were being made by skilled electricians to solve the problem. The time was so short after the introduction of the direct current dental motor that it would seem the alternating-current motor of the patent was produced as a development due to the gradual extension of the use of commercial alternating currents. The record does not make out a case "where the need has been long apparent and various persons had vainly sought to accomplish the desired result." Electric Railway Co. v. Jamaica Co. (C. C.) 61 Fed. 655.

The later Pieper patent, 721,229, differs from the earlier one only in the substitution of an inductive resistance for an ohmic resistance. The evidence shows that these two varieties of resistance were old and well-known equivalents of each other. The change from one to the other did not involve invention.

The decree of the Circuit Court is affirmed, with costs.