## In re KOELLE.

### (District Court, E. D. Pennsylvania. June 29, 1909.)

### No. 2,877.

BANKRUPTCY (§ 409*)—DISCHARGE—FAILURE TO KEEP BOOKS.

A bankrupt's indebtedness amounted to $21,000, of which $8,000 was due merchandise creditors, whose names appeared on his books, and $13,000 was due to relatives and friends for money loaned, none of which appeared on the books. The bankrupt's only explanation of the absence of such claims was that he knew the lenders would not push him, and he thought it was not necessary for his creditors to know he had money from his wife. *Held* to establish an exception to the bankrupt's discharge for failure to keep books from which his financial condition might be ascertained, with intent to conceal the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

In Bankruptcy.

Wessel & Aarons, for bankrupt.

Harris S. Sparhawk, for objecting creditor.

J. B. McPHERSON, District Judge. Two specifications of objection were filed to the bankrupt's discharge, but only one need be noticed, namely:

"That with intent to conceal his financial condition the said bankrupt has * * * failed to keep books of account or records from which such condition might be ascertained."

Upon this objection the referee (Theodore M. Etting, Esq.) has reported as follows:

"The bankrupt's indebtedness amounts to $21,000. Of the above sum $8,000 is due to merchandise creditors whose names appear upon his books, and $13,000 is due to various persons who at sundry times loaned him money, and none of whose names appear on his books. Amongst the persons referred to are his wife, brother, and other near relatives. The amount due them is somewhat in excess of $10,000. Somewhat less than $3,000 is due to various friends. The books of the bankrupt contain no entry whatever of the existence of any of the above loans, nor is there any record of the original notes given for said loans, or of the renewal notes made from time to time thereafter; the original notes having been destroyed. The allegation that the bankrupt has failed to keep books of account or records from which his true financial condition might be ascertained is fully and clearly proven. He has not destroyed any of his books. The notes upon which the existing claims are

predicated were, for the most part, given during the year 1907. This was the year during which the petition in bankruptcy was filed against him. The destruction of the original notes, whilst natural enough under ordinary circumstances, is not without significance under present conditions. It is contended on behalf of the bankrupt, and with his contention I agree, that the burden is on the objecting creditor to show, not only that the books, as kept, concealed the financial condition of the bankrupt, but also in so keeping them evil intent must be shown. Proof of such intent must, it is true, be convincing; but the intent with which an act is done is not, ordinarily, a matter of direct evidence, but an inference from the act and surrounding circumstances. Every one is presumed to contemplate the ordinary and natural consequences of his own acts. It would be difficult to devise a more effectual method of concealing one's true financial condition than to continually omit from the books of account any entry of borrowed money or any record of notes given therefor. The suppression of indebtedness for borrowed money is the omission of something which is always present to the mind of the debtor. It cannot be inadvertent. It must be deliberate. In re Brener (D. C.) 20 Am. Bankr. Rep. 644, 166 Fed. 930.

"Such a suppression at once induces suspicion, especially when, as in the case at bar, the indebtedness is largely due to near relatives. It is impossible to attribute this omission to bad bookkeeping, and no satisfactory explanation has been given. The books were kept by the bankrupt himself. A not infrequent test of intent is whether or not the books, as kept, tended to subserve the bankrupt's interest. In re Garrison, 17 Am. Bankr. Rep. 834, 149 Fed. 178, 79 C. C. A. 126.

"The bankrupt understood his books as he kept them. If examined by another person, his financial condition could not have been ascertained therefrom. He could, by reason of this method of concealment, make representations to creditors which his books, if examined, would not disprove. He was not a skilled bookkeeper, but he had kept his own books for over 20 years. He was not a small trader. He was doing a business which varied from $15,000 to $20,000 annually. He was a man of upwards of 50 years of age, an upholsterer by trade. He appears always to have kept the books in the same manner; but I cannot see that this circumstance tends to his advantage. Re Feldstein (D. C.) 6 Am. Bankr. Rep. 461, 108 Fed. 794, affirmed 8 Am. Bankr. Rep. 160, 115 Fed. 259, 53 C. C. A. 479.

"I am constrained, therefore, to recommend that his discharge should be refused."

It is conceded that there are no entries concerning these loans of money from relatives and friends, and it is therefore beyond dispute that the bankrupt's financial condition could not have been ascertained by an inspection of his books. The sole remaining question is: What was his intent in failing to make the proper entries? The referee has found that the intent was to conceal his financial condition, and after a review of the testimony I agree with this finding. The bankrupt's business experience had been prolonged and reasonably extensive. He is a man of intelligence, as his testimony sufficiently indicates; and it is not credible that he could have failed to know that his books omitted material items of his indebtedness, and were therefore defective. His only explanation is that:

"I never counted those notes. I thought that, because I knew they would not push me, you know; and I thought it was not necessary for these people to know I had money from my wife."

Prima facie, at least, a man must be held to intend the natural and probable consequence of his acts, and the inevitable consequence of this omission was to conceal his financial condition. The presumption of such an intent may not be conclusive, but it has not been met by the

testimony that was offered before the referee. A similar case is Re Pomerantz & Hopkins (D. C.) 168 Fed. 444, recently decided in this district.

The recommendation of the referee is approved, and the clerk is directed to enter an order that the discharge is refused.