STILLWELL v. McPHERSON, Highway Com'r.

(Circuit Court, N. D. New York. July 15, 1909.)

PATENTS (§ 328*)—INVENTION—SHEET METAL CULVERT.

The Watson patent, No. 559,642, for a culvert constructed of corrugated sheet metal pipe in sections, bolted or otherwise fastened together, is void on its face for lack of patentable invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Demurrer to bill of complaint for alleged infringement of United States letters patent.

Orwig & Lane, for complainant.
Risley & Love and Bond & Miller, for defendant.

RAY, District Judge. Two grounds of demurrer are urged: First, that title is not shown in the complainant; and, second, that on the face of the bill, the letters patent being a part thereof, it appears that the same are void for want of patentable invention.

When the court has any doubt, a demurrer should not be sustained on the latter ground. Where the court has no doubt, the demurrer ought to be sustained, if want of patentable invention is plain. The courts have said this many times. If there is doubt, the complainant should be allowed to show "a long-felt want," that he has supplied it, and that his device has met with commercial success, etc. This fact, if proved, has been held to turn the scale in some cases. Here the patentee says:

"My invention has for its object to provide a corrugated sheet metal pipe adapted particularly for use as a culvert and as well curbing, to take the place of vitrified tile now in common use for those purposes."

He then says that the disadvantages incident to the use of tile, particularly for culverts, reside in the weight of the material, and hence the necessity of making it in short lengths, which must be joined when the culvert is laid by cement or its equivalent, and its frangibility, which necessitates the transportation thereof by wagon in small loads; a length not exceeding 16 to 20 feet being the capacity of an ordinary two-horse team. He then says that the cement is liable to be washed out of the joints, and that the washing or the undermining of the culvert then results by reason of the weight of the tile, which sinks, and the sections separate and sometimes break. He also says that on account of the weight of tile the bed must be carefully prepared, evenly prepared, so as to relieve the joints of strain. He also says that such preparation of the bed is expensive without considering the repairs made necessary by a small leakage at the joints, and—

"hence it is my object to provide a substitute for tile culverts which may be laid upon an uneven bed without injurious results; the improved culvert being strengthened against transverse as well as against crushing and other destructive strains, the joints being formed without the use of cement, and a greater length of material being transportable at one time by the means ordinarily employed for the purpose."

I take it there is no patentable novelty or invention in conceiving the idea that a sheet metal pipe is less liable to breakage than a tile pipe, and that it may be transported in greater lengths. This has been common knowledge for a half century at least. Corrugated pipe is stronger than plain pipe. This is and was common knowledge. To substitute the sheet metal pipe for vitrified tile was not a patentable invention. Iron pipe—cast iron and sheet iron—has been used to carry water above ground and under ground, over bridges, on bridges, and under bridges, for 40 years at least, and this is common knowledge with all practical men, all observing men. Hollow logs have been used for the same purpose. It was a mere question of cost and durability. Of course, if the culvert was of such length that it became necessary to join two or more lengths, the question of a joint with a minimum of leakage and nonliability to separate became important. With tile it has been customary to have a flange at one end, into which the other end was inserted, and then cement it. It is not really practicable to bolt vitrified tile together.

Has the patentee disclosed patentable novelty in joining the ends of his sheet metal pipe? One end of a length flares, and the other end does not; and hence it slips into the flared end easily. Now the patentee bolts the one length to the other where they thus join. The writer has been familiar with sheet iron stovepipe, plain and corrugated, for at least 50 years, and from youth until the present day has had occasion to assist or act as principal, in emergencies, in putting up the stovepipe, now only used in the writer's kitchen. On the farms such pipe is in common use all over the country where stoves are used. The lengths of pipe are made with one end a little enlarged and the other a little contracted, and when put together firmly are usually riveted. They might be bolted. So far as I can see, the "corrugated metal culvert" of the patent in suit is but a reproduction on an enlarged scale of the common and well-known stovepipe in common use for half a century; bolts taking the place of rivets. I have no doubt of its utility. In fact, old stovepipe is commonly used as a culvert in places where little weight is to rest upon it. It will rust out in time, as will all sheet metal. To be sure, this culvert pipe is heavier than stovepipe—is placed underground and used to carry water, instead of being placed in a house and used to carry smoke. But to my mind it is not a transposition to a new field of action to meet a new and a novel exigency.

The claim reads:

"A culvert constructed of sheet metal and comprising connected cylindrical sections provided with circumferential corrugations extending to the extremities of the sections, each section terminating at one end in a flared and at the other end in a contracted portion of a corrugation, whereby the contracted extremity of one section is adapted to fit into the flared extremity of the adjoining section to interlock the terminal corrugations, and means, as bolts, engaging the overlapping extremities of the corrugations for securing the sections together, substantially as specified."

This claim is not limited to bolts. He who should use rivets to join the sections would infringe, and the result is, if this patent is held valid, that every farmer who shall use two or more sections of stovepipe

riveted together to carry water from a spring or from the roadside, etc., will be liable to a suit in equity and an injunction. There is nothing new or novel about this "corrugated metal culvert." The idea of a stovepipe to conduct smoke has been carried forward to a corrugated sheet metal culvert to conduct water. To my mind there is an utter absence of "patentable invention." No doubt such pipe, when made, has been extensively sold and used. The joint, possibly, has been improved upon, but only in degree. The old idea is simply carried forward. This is not patentable invention. The joint is formed, say the specifications:

"Preferably each section terminates at one end in a flared portion of a corrugation, as shown at 1, and at the other end in a contracted portion of a corrugation, as shown at 2, whereby the flared end of one section is adapted to receive the contracted end of the adjoining section. These telescoping and interlocking extremities of contiguous sections are permanently joined by means of bolts, 3. The fit of the extremities of the sections is sufficiently close to form a practically water-tight joint, when secured by means of bolts or rivets."

The patentee also speaks of the added strength of the joints arising from the fact that, when the contracted end of one section is inserted in the flared end of the adjoining section and they are bolted together, we have a double thickness of sheet metal. This idea is not new. The pipe, as the patent states, consists of—

"sheet metal rolled to a cylindrical form and being provided with circumferential corrugations, preferably arranged in transverse planes in contradistinction to the corrugations which are formed spirally."

It was common to make such pipe—stovepipe, cold and hot air pipe, and other pipe—long before this patent was applied for. In Century Dictionary, under the verb "corrugate" we find:

"To wrinkle, draw, or contract into folds; * * * to corrugate iron plates for use in building."

Also, "corrugated" is thus defined:

"Wrinkled, bent, or drawn into parallel furrows or ridges; as corrugated iron."

There is no possible patentable invention, save in the mode of joining the sections. An idea is not patentable, but new and novel means to carry out a conception may be. As the pipe used is corrugated—that is, alternately enlarged and contracted in parallel wrinkles—the alleged inventor conceived the idea of cutting the sheet iron at the center of a raised portion, trimming off the other half of the severed portion, leaving the end of the next section, when rolled into a cylinder, depressed, so as to shove into and fit the raised portion. This is plainly shown in the drawings forming a part of the patent in suit. When shoved together, the overlapping sheets are bolted or riveted. This was within the province of a mechanic skilled in the art.

The demurrer is sustained, and there will be a decree dismissing the bill, with costs.