In re ARENSON.

(District Court, D. New Jersey. April 16, 1912.)

1. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—GROUNDS.

   A bankrupt, who obtained credit for additional goods on a materially false statement of his financial condition, and who subsequently to the purchase of the additional goods on credit made payments on earlier purchases, so that the amount owed by him at the time he went into bankruptcy was less than the amount of his indebtedness at the time of the making of the false statement, was guilty of making a materially false statement, defeating his right to a discharge in bankruptcy, under Bankruptcy Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310).

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—GROUNDS.

   Where the credit man of a seller, on a bankrupt placing an order for additional goods, refused to ship the goods and notified the bankrupt thereof, who made a statement of his financial condition, and thereupon the credit man approved the order and the goods were shipped, the credit was due to the making of the statement, which, if materially false, would defeat the right of the bankrupt to a discharge.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

195 F.—39

3. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—GROUNDS.

A bankrupt, who made a materially false statement in writing as to his financial condition by positively stating that he was not indebted to relatives or friends on loans, while as a matter of fact he was indebted to them in a sum nearly equal to the amount of the excess of his assets over his liabilities, as shown by the statement, could not excuse the falsity of the statement by showing that the creditor to whom it was made stated that it was a mere matter of form, and the creditor extending credit on the faith of the false statement could defeat the bankrupt's discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

4. BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—GROUNDS—"FALSE STATEMENT."

A bankrupt, who, to obtain credit, made a statement to a creditor showing a surplus of $3,700, but falsely omitted from his liabilities a sum nearly equal to the amount thereof, by falsely stating that he was not indebted to relatives, made a "false statement" within Bankruptcy Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), and he could not obtain a discharge in bankruptcy, though he stated that he did not consider his relatives as creditors as they were not pressing him, and that he had no intention to deceive; the word "false" being used in its primary legal sense as importing an intention to deceive, and one being presumed to intend the natural consequences of his words and conduct.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*

For other definitions, see Words and Phrases, vol. 3, p. 2670.]

5. BANKRUPTCY (§ 414*)—DISCHARGE—GROUNDS—OBJECTIONS—BURDEN OF PROOF.

A creditor, who objects to the discharge in bankruptcy of a bankrupt on the ground that he had furnished a false statement as to his financial condition, has the burden of proving that the bankrupt made a material statement known to him to be untrue when made; but, where that fact is shown, the burden shifts to the bankrupt to show that it was not made with intent to deceive, and, unless that burden is met, he is not entitled to his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. § 414.*]

In the matter of Harry Arenson, a bankrupt. Heard on objections to discharge the bankrupt. Application for discharge denied.

Lesser Bros., for trustee.

Joseph Anderson, Sr., for bankrupt.

RELLSTAB, District Judge. The question in this case is: Did the bankrupt obtain property upon credit on a materially false statement in writing made by him for the purpose of obtaining such credit?

The referee found that the objecting creditor had not conclusively proved that the statement made by the bankrupt was knowingly false or fraudulent, and concluded that the discharge should be granted.

The bankrupt had been in the retail shoe business for about 11 years, and had been a customer of the objecting creditor, J. E

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bates & Co., for about 2 years. On September 30, 1910, the bankrupt was at the creditor's place of business soliciting more goods, and was told by Mr. Harting, the credit man of such creditor, that his account was large enough, and that a statement of his financial condition was desired. Thereupon the bankrupt was turned over to Mr. O'Connor, the company's collector and assistant credit man, who, after talking with the bankrupt, filled in the blanks of a printed form used by such creditor in obtaining financial statements. This blank, after being filled in, was handed to the bankrupt, who thereupon signed it. He was then taken back to Mr. Harting, who looked the statement over, and, after some talk with the bankrupt, approved the order for the goods, given that day. Further credit was given the bankrupt on divers other days subsequent thereto.

In this financial statement, in the blank opposite the phrase "loans from friends or relatives," is written the word "none." Bankrupt could read and write the English language, and he knew at that time that he owed to relatives and friends, for loans, sums of money aggregating above $3,500. The case therefore shows that bankrupt knowingly made an untrue statement concerning his liabilities, and that further credit was obtained by him from the objecting creditor after he had furnished such statement.

[1] On behalf of the bankrupt it is contended that no new credit was obtained by him after making such statement; that is, that though subsequent purchases were made, yet, by reason of payments made by him on earlier purchases, the amount owed by him to such creditor at the time he went into bankruptcy, was less than that owing at the time the statement was requested. The practice of bankrupt had been to make payments due on an old account when additional purchases were made. This course was pursued both before and after making such statement. Under section 14b (3) of the Bankruptcy Act, it is immaterial whether the credit obtained is large or small, or whether it is given to a new customer or one who had already dealt with the creditor. It includes further credit as well as new or larger credit.

[2] It is further contended that such credit was not due to the making of such statement. But the evidence does not warrant any such conclusion. Harting expressly says:

"Harry Arenson placed an order for more goods. I refused to ship the goods as his account was high enough. I called him in the office and told him I didn't care to issue any further credit, whereupon I called for Mr. O'Connor and sent him with Mr. Arenson to take this financial statement. * * * Upon that statement I checked his order for that day. He presented an order which I refused to ship, and upon him making this statement and showing that his financial condition was so good, I agreed to give him more credit. Then I approved the order."

[3] It is further contended that this statement was obtained from the bankrupt on representation that it was a mere matter of form; that upon being asked by O'Connor what properties he had, bankrupt replied that he had not any idea and could not give any figures. He said he was told that they did not amount to anything, that it was only a matter of form, and that he was told to make a guess and give

any figures at all; that when he gave the statement he did not know exactly how much he had; that it was only guesswork; that he had not taken account of stock for some years previous. This, however, if true, cannot absolve the bankrupt from making a statement which he knew was absolutely untrue. If the alleged falsity related to the amount of merchandise or cash on hand, or the amount due for merchandise, and in the answer the amounts given were not accurate, such a course of obtaining a financial statement might be effectively pleaded against such an accusation. But here we have not an approximation of the amount due by him to his relatives or friends on loans, but a positive assertion that no such indebtedness existed. Furthermore, this transaction of obtaining and giving a financial statement did not end with this more or less loose talk that passed between the bankrupt and O'Connor. The bankrupt was taken to the credit man, Mr. Harting, who had declined to give him further credit without a financial statement, and who says that, after looking it over, he talked with him about its contents. The bankrupt does not contend that he told Mr. Harting he had not any idea of the value of his assets or the extent of his liabilities. He admits that Harting told him that his account was large enough; that he would have to give a statement; that he saw Harting immediately after he had signed the statement; but denies that there was any talk between them about it. He knew of the practice of exacting financial statements from merchants, for he admits having given one to a shoe mercantile agency about 16 months previous, in which he also omitted any mention of such loans. In the present instance he had been turned over to O'Connor by Mr. Harting for the very purpose of securing a statement. He knew that it was being asked for because of an unwillingness to give further credit. He was able to read and write. He signed it after he had seen O'Connor filling in the blanks while he was answering his questions. In such circumstances it does not lie in the mouth of bankrupt to say that the whole thing was looked upon as a mere matter of form, and that he should not be held accountable for his statement that he owed nothing to friends and relatives for loans, when he knew the fact to be otherwise.

[4] It is further contended that, while such statement was untrue, it was not false within the meaning of the cited section of the bankruptcy act. In Gilpin v. Merchants' National Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023, 21 Am. Bankr. Rep. 429, it was held that the word "false" as there used "means more than merely erroneous or untrue, being used in its primary legal sense as importing an intention to deceive. And such a statement, in order to constitute a bar to a discharge, must have been knowingly and intentionally untrue." This case furnishes the criterion. That the bankrupt knew that such statement was untrue is not denied. He says, however, that he did not consider his relatives as creditors, as they were not pressing him; and further, in effect, that he had no intention to deceive. A rational being is presumed to intend that which is the natural consequence of his words and conduct. The statement of assets and liabilities furnished by the defendant to this

creditor, on its face, showed a surplus of $3,700. He omitted from his liabilities a sum nearly equal to the amount of such surplus. This he did knowingly, and, presumably, for the purpose of hiding from them his true financial condition.

[5] While the burden of proof is upon the objecting creditor to establish the cause which he claims bars a discharge, yet, when such creditor shows that a material statement was known to be untrue when it was made, the burden of proof shifts to the bankrupt to show that it was not made with intent to deceive. This burden the bankrupt has not met. His disclaimer of any purpose to deceive lacks any corroboration. It is a defense at the command of any one, and, in the absence of corroborating circumstances, is entitled to little weight. In re Koelle (C. C.) 171 Fed. 257, 258; In re Augspurger (D. C.) 181 Fed. 174, 25 Am. Bankr. Rep. 83; Shaffer v. Koblegard, 183 Fed. 71, 105 C. C. A. 363, 24 Am. Bankr. Rep. 898.

"Creditors are entitled to a true statement when one is called for, and in giving it the parties must be held to the consequences of their acts in making and signing it." In re Cantor (D. C.) 26 Am. Bankr. Rep. 859, 862.

"The omission by a bankrupt from a financial statement in writing made by him, on which he obtained goods on credit, of any reference to a large sum which he owed to relatives for borrowed money, shows a fraudulent intent, and debars him of the right to a discharge under Bankruptcy Act, without regard to the amount of the loss thereby occasioned to the objecting creditors." In re Brener (D. C.) 166 Fed. 930, 931.

In the latter case, Judge Hough, in commenting upon the bearing of the different kinds of indebtedness on the granting of commercial credit, used language which highly commends itself to this court. He said:

"It is a notorious fact, of which I think the court may take judicial cognizance, that intending vendors of merchandise are peculiarly sensitive regarding debts for borrowed money. They are apt to look into them with a microscopic eye. They induce suspicion of themselves, and very justly so; for it is also a matter of common knowledge that such liabilities are earliest discharged, if the creditors are related by blood or marriage, when doubt arises as to ability to pay all creditors. * * * The padding of a statement by doubtful assets may be regarded as but an unconscious expression of undue hopefulness, and in an illiterate man may perhaps be looked upon with a benevolent eye; but the suppression of all indebtedness for borrowed money is, I think, a particularly flagrant form of material falsity: First, because it is a suppression of truth especially calculated to prevent further inquiry; and, second, because its omission is the omission of something particularly and always present in the mind of the debtor. It cannot be inadvertent. It must be deliberate."

In the case at bar the printed form used to obtain information regarding the liabilities distinguished not only loans from other kinds of indebtedness, but the character of the loans themselves, and called for specific answers thereto, as classified. The assertion by the bankrupt that nothing was owing by him for loans to either the banks or relatives would naturally have the effect not merely of deceiving the creditor seeking a true statement as to the probable financial worth of the bankrupt, but also as to his likelihood of getting an equal share of the debtor's assets in case of insolvency.

The motive to protect a relative by preferring him in case of inability to pay all is ever present with a failing debtor. A knowledge

by the creditor of such indebtedness, if it exists, is essential in order to determine the amount of credit that should be given to such debtor. The failure by the bankrupt in the case at bar to disclose to the objecting creditor his indebtedness to his relatives for borrowed money was, in the nature of things, bound to deceive such creditor, and will be presumed to have been intended,·notwithstanding the insistence by the bankrupt that it was not.

The finding of the referee is reversed, and the bankrupt's application for discharge is denied.