## ACME STEEL GOODS CO. v. AMERICAN METAL FASTENERS CO.

(District Court, N. D. Illinois, E. D. July 18, 1913.)

No. 30,766.

1. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—PLEADING.

In a suit for infringement of a patent for an improvement in the manufacture of metal fasteners, evidence is admissible to show that there was a demand for such fasteners, that they had not gone into commercial use because of their cost, and that such cost had been so reduced by the patented machine that they at once came into general use, and under the new equity rules such facts should be pleaded.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS AND MACHINE FOR MAKING METAL FASTENERS.

The Norton patents, No. 859,686, for a process of making corrugated metal fasteners, and No. 956,540, for a machine for practicing such process, *held* infringed by a machine which embodies the essence of the invention and differs from that of the patent only in increasing the number of parts and using three operations to accomplish what is done by the patented process and machine in one.

In Equity. Suit by the Acme Steel Goods Company against the American Metal Fasteners Company, impleaded as the Wolf-Craig Company. On final hearing. Decree for complainant.

Rector, Hibben, Davis & Macauley, of Chicago, Ill. (Frank Parker Davis, of Chicago, Ill., of counsel), for complainant.

Harry P. Simonton and William R. Rummler, both of Chicago, Ill., for defendant.

SANBORN, District Judge. Bill for infringement of two patents, one covering a corrugated metal fastener, called a "saw-tooth" fastener, the patent having been issued to Elliott S. Norton, and assigned to complainant, dated July 9, 1907, and numbered 859,686, the other on a machine for making the fasteners, issued to the same person, and so assigned, dated May 3, 1910, and numbered 956,540. Certain questions are raised as to the allegations of the bill, and want of novelty and infringement are set up as defenses.

The bill and answer are in the usual conventional form in use before the new rules took effect. When the case was first heard complainant offered evidence tending to show a prior want of such a device, unsuccessful experiments to meet it, and complainant's success. As none of these things are expressly pleaded, an objection to the proposed evidence was sustained, but complainant was given time to amend. Accordingly an amendment was filed, alleging in substance as follows: (1) That prior to the patent, the fastener in question had not gone into commercial use. (2) That efforts to produce it by various processes had been unsuccessful. (3) That the demand for it had remained unfulfilled. That upon the marketing of complainant's fasteners, an industry of large proportions grew as a result of the method of manufacture. (4) That an allied industry also grew up, to wit, the industry of manufacturing and selling automatic machines for driving the fasteners.

---

[1] Defendant filed a motion to strike out the amendment as immaterial and impertinent; also to strike out a clause of the original bill alleging public acquiescence in complainant's patent rights. The motion was made on the ground that the only relevant issues were validity and infringement, and that it is inadmissible to broaden a patent, or fix the range of equivalents, by offering any evidence whatsoever. The motion was heard with the merits, and the whole taken under advisement. The evidence sustains these allegations.

As to the question of pleading: The United States courts have generally given consideration, as well as much weight, to matters like those so pleaded and proved. They seek to get behind the mere paper of the patent and ascertain what the actual industrial conditions were, what demand there was for the patented invention, and what effect it had upon the progress of the art. For this reason it is common practice to overrule demurrers to patent bills. Bottle Seal Co. v. De La Vergne Bottle Seal Co. (C. C.) 47 Fed. 59; Krick v. Jansen (C. C.) 52 Fed. 823; Amer. Fiber-Chamois Co. v. Buckskin-Fiber Co., 72 Fed. 508, 18 C. C. A. 662; Neideck v. Fosbenner et al. (C. C.) 108 Fed. 266; Stillwell v. McPherson (C. C.) 172 Fed. 151; Adrian Wire Fence Co. v. Jackson Fence Co. (C. C.) 190 Fed. 195.

Such testimony does not broaden the patent, although the actual result may be otherwise. It enables the court to give the invention its proper place in the development of the art. Satisfactory evidence of a long-felt want will go far to indicate patentable invention. Pieper v. Electro Dental Mfg. Co., 160 Fed. 932, 88 C. C. A. 112.

Now that trials in patent cases are in open court, and the taking of depositions or oral testimony out of court is made the exception by the new rules, the bill should plead matters of the kind referred to, so that defendant may have opportunity to meet the issue, and not be taken by surprise. No change in the rule of admissibility, however, has been made. And such evidence is material where, as in this case, the patents are for an improvement in manufacture, rather than in the quality of the devices themselves. The old method of making these fasteners was just as good, if not better, than the new; but by the old method each fastener had to be sharpened by hand. For this reason they could not be made cheaply; the production cost being prohibitive. The old fastener would break down the grain of the wood into which it was driven, but by sharpening with a file it could be used with success. By complainant's machine they can now be made by the ton with small expense, thereby bringing into use for box making, etc., large quantities of useless lumber. The old process of grinding the fasteners invariably formed burrs in the throats or spaces between the points of the teeth. By the new the fasteners are cut so as to avoid this defect, grinding being used only as a slight finishing treatment, and only by way of economy in manufacture. Partly in view of the result the patentee's discovery rises to the dignity of invention, and the class of evidence in question is just as much admissible to show the relation of the discovery to the art, and its proper place therein, if not more so, than in case of a new product or device.

[2] The question of novelty: Claim 1 of the method patent reads thus:

"An improved process of producing sharpened corrugated metal fasteners, the same consisting in bringing one longitudinal edge of a cross-corrugated metal strip to a series of short sharpened edges or points with intervening U-edges by a single operation on each side of the strip, removing at one diagonal cut the metal of the strip between the ridge of each corrugation and a median line of the same and the neighboring reverse corrugation."

The description of the machine patent follows quite closely the method patent. It covers a machine for rapidly turning out the corrugated fastener in a long strip, by a single cutting operation on each side of the strip.

There are two main differences between complainant's and defendant's process. Complainant cuts the metal at the middle line of the strip by a single operation, leaving a sharp cutting edge, needing no further sharpening; but a light grinding operation is practiced to save knife sharpening, and which is a matter of economy. Defendant makes the same kind of a cut by two operations, with knives operating in the same plane, but operating not on the middle line of the strip, but slightly back of it, so that the fasteners are not sharp enough for use without the additional grinding of the strip along the edge to sharpen the points. In this way defendant uses three operations, instead of the single one described in the quoted claim; or, assumed that the two cuts of the knives in the same plane to be the equivalent of complainant's single cut, defendant uses two operations to complainant's one. So the question is whether the rule of equivalents can apply.

There is no doubt that defendant has appropriated the essence of the Norton patents by dividing up operation or doubling the operative parts. Defendant's machine was devised by a former employé of complainant, whose work was to look after the fastener machines..

Instead of cutting the strip away on its middle longitudinal line, so as to leave the edges sharp, defendant cuts a little outside of such line, thus leaving a more blunt point, which is then sharpened by grinding. It also makes two slices of the material instead of one, by knives operating exactly in the same plane. The wording of the Norton claims, which require the cutting to be on the median longitudinal line of the strip, is thus avoided. In other words, defendant took a patent limited more than the prior art required, and, while appropriating the very essence of the real invention, after it had become successful in a marked degree, escaped the literal meaning of the claims by broadening the cutting line, and using three operations to sharpen the fasteners instead of one. In Oval Wood Dish Co. v. Sandy Creek Co. (C. C.) 60 Fed. 285, the infringing machine used two knives to do the work of one in the patented machine. Judge Coxe held this to be immaterial, saying that plaintiff's claim might have been broader, and that the court should not permit unnecessary limitations to destroy the benefit of the invention.

The situation presented is not an unfamiliar one. After a useful

product had been known from 15 to 20 years, and its advantages appreciated, and unsuccessful attempts made to commercially produce it in order to fill an insistent demand for it, Norton, the inventor of the patents in suit, made a discovery. After he, too, had labored for a long time to solve the problem that had baffled the trade, he hit upon the way to do the thing practically and commercially. His company saw, when Norton put the thing in practice, that it was a solution of the problem, and promptly brought it to commercial form. As soon as the article produced by the Norton process was put upon the market, it was immediately seized upon by the trade which had so long demanded it. The demand was large and constantly increased, so that complainant found it necessary to repeatedly duplicate its machinery for producing the article. An enormous business grew up as a direct result of this discovery of Norton's. An allied industry sprung from it, that of manufacture of box nailing or corrugated joint fastener driving machines. The article not only sold by the carton or box, such as found on the shelves of hardware stores, but in bulk, by weight, and in large coils or continuous strips, for use in the automatic driving machines. It sold by the barrel, and even by the car load. Naturally this thing was coveted by competitors, but the merits of it appear to have been so far realized that most of the competitors have respected the patent rights of the complainant.

At this point there enters the field a competitor, officered by a former employé of the complainant company, and having associated with it another former employé, who had been employed in the complainant's factory to look after the very machines which complainant was using to turn out this product. The machine is so changed as to multiply the necessary steps, and thus escape infringement if possible.

Under these circumstances complainant is entitled to liberal treatment.    Oval Wood Dish Co. v. Sandy Creek Co., supra.

Infringement of a useful invention cannot ordinarily be escaped by a mere multiplication of operative parts. Bonnette Sprinkler Co. v. Koehler, 82 Fed. 428, 27 C. C. A. 200; Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162. 51 C. C. A. 109.

A meritorious invention should not be evaded for any but substantial reasons. The question is whether the substance of the invention has been taken. Cimiotti Unhairing Co. v. American, etc., Co., 115 Fed. 498, 53 C. C. A. 230.

"If the patentee's ideas are found in the construction and arrangement of the subsequent device, no matter what may be its form, shape, or appearance, the parties making or using it are deemed appropriators of the patented invention, and are infringers. An infringement takes place whenever a party avails himself of the invention of a patentee without such a variation as constitutes a new discovery." Norton v. Jensen, 49 Fed. 859, 1 C. C. A. 452.

Defendant uses three operations to perform what the complainant does in one, but this increase of motion is merely for the purpose of avoiding the patent claims. There would not seem to be any invention in taking two strokes where one would do the same work, or in so setting the knives as to leave an edge to be afterwards sharpened, which might as well be sharpened by the first stroke. Defendant has not

made any new discovery, or apparently used any invention, merely ingenuity in trying to escape infringement of a meritorious patent. Ingenuity has been displayed, but apparently nothing more. The rights of the public are not so precious as to justify piracy. It is as important to protect the inventor against piracy as the public against unauthorized monopoly. Brammer v. Schroeder, 106 Fed. 918–920, 46 C. C. A. 41.

A decree should be entered for injunction and accounting as prayed.