### In re LEVENSON.

(District Court, D. Massachusetts. April 30, 1914. On Withdrawal of Objections, June 19, 1914.)

### No. 18755.

1. BANKRUPTCY ☜381—OFFER OF COMPOSITION—OBJECTIONS.

A debtor had had credit with a trust company not exceeding $1,000. He desired to increase the amount of his credit, and at the company's request furnished a statement of his financial condition, stipulating that it should be considered as continuing in force until the company was notified to the contrary. The statement was materially false. An additional loan of $500 obtained by the statement was paid off, and at the time of the bankruptcy the debtor owed the company only $500, which was on a renewal note taken by the trust company after the statement. Its officers testified that it relied on the statement in all subsequent transactions with the bankrupt. The testimony of the debtor and of the officers of the company showed that no disclosures of any change in the financial condition of the debtor were made to the company. *Held*, that the objection of the company to the debtor's offer of composition must be sustained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. ☜381.]

2. BANKRUPTCY ☜381—COMPOSITION—OBJECTIONS—WITHDRAWAL.

The court will not permit objections to an offer in composition which had been heard and sustained to be withdrawn after the decision, under any agreement or transaction by which the objecting creditor receives, directly or indirectly, a larger sum on its claim than other creditors of the same class.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. ☜381.]

In Bankruptcy. In the matter of Max M. Levenson, alleged bankrupt. Objection to offer of composition sustained, and withdrawal of objection refused.

Warren, Garfield, Whiteside & Lamson, of Boston, Mass., for objecting creditors.

Abraham E. Goldberg and Arthur E. Burr, both of Boston, Mass., for bankrupt.

MORTON, District Judge. [1] The alleged bankrupt is an intelligent young man, who, after having studied law for a time, went into business. He employed a bookkeeper, who kept a set of books for him. He had a "line of credit" not exceeding $1,000 at the Paul Revere Trust Company; i. e., loans, not exceeding that amount in the aggregate, were from time to time made to him by the trust company. He intimated his desire to increase the amount, and was asked by the trust company for a written statement of his financial condition. Shortly

before this request, a trial balance had been made up by his book-keeper, under date of December 4, 1911. There can be no reasonable doubt that the alleged bankrupt knew what it showed. On or about December 12, 1911, he made the statement in writing to the trust company on which the first objection to the offer in composition is based. This statement appears to be in the alleged bankrupt's handwriting; it was signed by him, and was presented by him in person to the trust company, which thereupon loaned him $500 more. The statement contained a provision that it should be considered as continuing in force, and as being a true statement of his financial condition, until the trust company was notified to the contrary.

That the statement was materially false is clear; and no serious contention to the contrary is now made. That it was known by the alleged bankrupt to be false is established. The additional loan of $500 obtained by this statement has been paid off; and at the time of the bankruptcy the alleged bankrupt owed the trust company only $500, instead of $1,000, which was the amount due to the trust company when the statement was called for.

During the period subsequent to the statement and before the failure, a number of the alleged bankrupt's notes were renewed by the trust company; notes of the alleged bankrupt aggregating $1,000 were paid and extinguished during that time. The last renewal, that of a $500 note, was made on July 12, 1912. The only outstanding indebtedness to the trust company is on this renewal note.

It is urged that there is now no existing indebtedness created in reliance upon the false statement. It is said that the trust company, having loaned up to $1,000 to the alleged bankrupt without calling for a statement, plainly did not rely on the statement in its subsequent dealings with him after the amount of his indebtedness fell below $1,000. It seems to me, however, that the evidence does not support this contention. The trust company officials say that, after the statement was received, their transactions with the alleged bankrupt were made in reliance on it, and that the $500 note which the trust company now holds would not have been accepted, but for the statement in question. The alleged bankrupt having undertaken to state his true financial condition at the trust company's request, and having agreed that he would notify the trust company of any material change in that condition, I see no sufficient reason for disbelieving the statements of the trust company officials that they did in fact rely upon the statement in all their subsequent dealings. I do not understand that the referee disbelieved them. He apparently based his conclusion that there is no existing indebtedness created through reliance on the false statement, largely, if not wholly, on his finding that previous to the last renewal the alleged bankrupt had told the trust company, in substance, that he was having a hard time, and had in effect given the trust company to understand that the statement no longer represented his true condition.

The objecting creditors insist that no evidence whatever was submitted justifying this finding. They assert that the fact, as found by the referee, was stated in the brief submitted before him on behalf of the alleged bankrupt and was unsubstantiated by any evidence. I

have carefully gone through the transcript of the testimony submitted before the referee, and have been unable to discover any evidence supporting this finding by him. I am aware that the report of testimony sometimes fails to incorporate admissions of counsel or conferences between the trial judge and counsel on which important findings of fact may be based; and I should be reluctant to disregard the referee's conclusion simply because the report of the testimony showed nothing on which his finding was based. In this case, however, in addition to the absence of such evidence, there is testimony from the bankrupt himself which indicates that he did not make any such disclosure to the trust company; and the testimony of the officers of the company certainly contains no suggestion that any such disclosure was made to them. Upon this state of the record, I cannot properly assume that there were testimony or admissions by counsel justifying the finding under discussion. The alleged bankrupt's indebtedness to the trust company is less than it was at the time when the statement was made; but, for the reasons stated in Re Arenson (D. C.) 195 Fed. 609, and Ragan, Malone & Co. v. Cotton, 200 Fed. 546, 550, 118 C. C. A. 640, this fact is not conclusive against reliance on the statement.

In re O'Callaghan (D. C.) 199 Fed. 662, on which the referee relied, is essentially different from this case. There the false statement was made, not by the bankrupt, but by her husband; it apparently resulted from an unintentional error on the part of the bookkeeper; it was almost three years and four months old at the time of the bankruptcy; and it seems to have had no provision that it should be considered as remaining in force until the creditor was notified to the contrary. The opinion of Judge Hough in Re Brener (D. C.) 166 Fed. 930, is applicable to many points in this case. See, too, In re Simon (D. C.) 201 Fed. 1004, 1008.

I therefore am obliged to hold that the first objection to the composition is well taken and must be sustained. It is not necessary to pass upon the others.

## On Withdrawal of Objections to Confirmation of Composition.

[2] I am not aware of any case in which this court has permitted objections to an offer in composition which have been heard and sustained to be withdrawn after the decision, under any agreement or transaction by which the objecting creditor received, directly or indirectly, a larger amount on its claim than other creditors of the same class. In one case in which such objections had been prosecuted and upheld by the court, an arrangement was approved whereby the objecting creditor was reimbursed the actual and necessary expenses of prosecuting the objections to the composition and was paid the same dividend as other creditors in his class. . Beyond that no case has gone, so far as I am aware; and I am not disposed to extend the practice. The dangers of allowing creditors to trade upon objections to petitions for discharge or to offers in composition which have been sustained are obvious. Upon the facts disclosed in the statement of the Paul Revere Trust Company, the objecting creditor, there is no sufficient reason for vacating the decision refusing confirmation of the offer in composition.