## In re TRIMBLE.

## TRIMBLE v. CHARITON & LUCAS COUNTY NAT. BANK.

### No. 9212.

Circuit Court of Appeals, Eighth Circuit.

Jan. 12, 1932.

R. E. Killmar, of Osceola, Iowa (O. M. Slaymaker, of Osceola, Iowa, on the brief), for appellant.

S. C. Hickman, of Chariton, Iowa, and W. R. King, of Omaha, Neb. (Hickman & Hickman, of Chariton, Iowa, and King & Haggart, of Omaha, Neb., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge.

This appeal is from a judgment denying the discharge of the bankrupt (appellant) on the ground that he had obtained from the appellee (which will hereafter be referred to as the bank) credit upon four written financial statements which were materially false. The questions for decision are purely those of fact. The issues raised by the application for discharge and the objections thereto were referred to the referee as special master, who, after hearing the evidence, filed his report sustaining the specifications of objection and recommending the denial of discharge. The bankrupt filed exceptions to the report. The judge approved the report, and denied the discharge.

It is urged that the court erred in accepting the report of the referee as conclusive and not as advisory merely; that the order confirming the report was made without adequate consideration and after a hasty and cursory examination; that the statements complained of do not constitute written financial statements for the purpose of obtaining credit; that the evidence does not justify the finding that credit was obtained on the strength of such statements, or that the statements were relied upon by the creditor, or that the statements were materially false, or that they were made for the purpose of obtaining credit, or that the bank was a creditor or party in interest.

■ There is nothing in the record to support the statement that the court did not give adequate consideration to the question of discharge. The order of the court recites: "And the court after examining said report and proofs offered and record made, and being fully advised in the premises." We must accept the truth of that recital as against the mere assertion of counsel for the bankrupt to the contrary.

The financial statements made to the bank were upon printed forms and upon the following dates: May 13, 1925, March 12, 1927, April 9, 1928, November 30, 1928. They were all signed by the bankrupt. They did not reflect his true financial condition, for the reason that they did not show the existence of an indebtedness to his wife upon a promissory note for $11,000, dated February 12, 1924, and secured by a second mortgage upon certain of his real estate. It is claimed by the bankrupt that these statements showed upon their face that they called merely for a list of property owned by him. Each statement is headed, "Credit Statement—Agricultural." Then follows the name of the bank, which is followed by this recital: "For the purpose of obtaining credit from time to time I hereby make the following as a true and correct statement of property owned by me to the extent and in the manner as shown in this statement." Then follow the name of the bankrupt, his address, and the date. The body of the statement is divided into two parts, one part headed "Assets," with appropriate spaces for the listing of "Cash," "Accounts and Notes Receivable," "Grain," "Live Stock," "Machinery," and "Real Estate," with a column at the right for the insertion of the value of each item, and a space at the bottom for "Total Assets"; the other part headed "Liabilities," with spaces for the listing of

"Notes Payable $\left\{\begin{array}{l}\text{Banks}\\\text{Individuals}\end{array}\right.$

Mortgages $\left\{\begin{array}{l}\text{Real Estate}\\\text{Chattel}\end{array}\right.$"

—with a column at the right for the insertion of the amount of each item of liability, and with a space below for "Total Liabilities", "Net Worth," and "Total" (the sum of "Net Worth" plus "Total Liabilities"). The statements upon their face clearly indicate that they were intended to show the entire financial condition of the signer and were for the use of the bank in extending or denying credit.

The statements were taken by three separate officers of the bank. In each statement appears an entry under "Liabilities" of "Notes Payable—Banks," and in the statement of May 13, 1925, an entry of a $200 note to C. E. Allen as "Notes Payable—Individuals." Each of the first three statements refers to a $16,500 mortgage liability, and in the fourth this is shown as $16,425—$7,500 on 170 acres and $8,925 on 392½ acres. There is nothing in the record to indicate that the mortgage indebtedness referred to had any connection with the $11,000 note and mortgage to Mrs. Trimble. The officers who took the statements testified that they asked the bankrupt with reference to notes owed individuals, and that he advised them that there were none except the Allen note referred to in the first statement.

■ It is claimed by the bankrupt that the written statements are not false, since there is nothing expressly stated in them which is untrue, and that falsity cannot be predicated upon what is not expressed or put upon the paper. Under certain circumstances, this might be true, as in International Harvester Co. v. Carlson (C. C. A.) 217 F. 736, in which the statement was taken by an agent of the Harvester Company from a farmer, and the schedule of liabilities was left completely blank. In that case, the court said (page 739 of 217 F.): "We do not think that an omission constitutes a 'material statement,' within the meaning of section 14 of the Bankruptcy Act [11 USCA § 32]. There is nothing in any other part of the form which declares that blanks unfilled are to be construed as representing that nothing is owing under the heading. A 'material statement' means not a blank, nor an inference from a blank. There must be a direct statement, either negative or positive, which is false, to justify the denial of the bankrupt's discharge." The court did not in that case intend to hold that, where a complete financial statement was called for, and the schedule of liabilities was partially filled out, an intentional failure to list an important item of liability, for the purpose of obtaining credit, would not make the statement materially false. If we assume, however, that the mere omission from the list of liabilities of the note to Mrs. Trimble did not of itself make the statement a false one, still the figures as to "Total Liabilities" and "Net Worth" were false, since the listed liabilities were $11,000 less than actual liabilities, and the stated "Net Worth" of the bankrupt $11,000 more than it actually was. Clearly, the omission of a substantial item of liability upon a statement calling for a listing of all liabilities and requiring that the amount of to-

tal liabilities and net worth be expressly set forth, makes the statement a materially false one. See In re Smith (D. C.) 232 F. 248, 252; Lincoln National Life Ins. Co. v. Hammer (C. C. A.) 41 F.(2d) 12, 20.

Another contention of the bankrupt is that the statement was taken by the bank, not for the purpose of extending credit, but for the purpose of complying with a request of the bank examiner that such statements should be obtained from borrowers. The bankrupt testified that he was told, in substance, that the statement was wanted for that purpose alone. He also testified that he had for many years before the giving of the first financial statement here involved obtained credit at the bank without giving a statement. The evidence for the bank was to the effect that the purpose of taking these statements was not merely to comply with a direction of the bank examiner, but that they were taken not only for credit purposes, but were actually used in granting renewals of notes and extending further credit to the bankrupt. One of the officers of the bank testified that a specific renewal of a note would not have been made had he known of the indebtedness of the bankrupt to his wife.

This court dealt with much the same situation as is here presented, in Cleland v. Iowa Loan & Trust Co., 260 F. 653, 654. There the court said: "The special master was of the opinion that a discharge should be granted, for the reason that he was unable to believe that the appellant intended by the false statement made to deceive the appellee, and appellant testifies himself that the omissions were inadvertent, and that he had no intention to deceive. But the statement was made for the appellee to act upon, and the appellant must be held to have intended the natural and ordinary results which would flow from his false statements. There is nothing in the evidence which shows that appellant was by reason of physical or mental disability unable to fully comprehend the purpose of a financial statement and to prepare the same intelligently. * * * The omission from the statement of the amounts owing to relatives bears strongly upon the question of fraudulent intent. In re Brener (D. C.) 166 F. 930; In re Miller (D. C.) 192 F. 730; In re Koelle (D. C.) 171 F. 257; In re Augspurger (D. C.) 181 F. 174; In re Simon (D. C.) 201 F. 1004, 1009."

It is also claimed by the bankrupt that as each statement was taken it had the effect of canceling or waiving all prior statements. There is no merit in that contention, for the reason that the objection to the discharge was that the bankrupt obtained some credit from the bank by virtue of each separate statement that he gave, at or shortly after the time the statement was given. If it were true that no credit had been obtained from the bank until after the fourth statement had been given, the former statements would be unimportant; but the bank claimed and the evidence showed that, after each statement was made, and before the next was taken, the bankrupt received credit. This is not a case where an attempt is being made to defeat a discharge because of an extension of credit based upon a statement so old as to have lost its vitality, as in International Shoe Co. v. Kahn (C. C. A.) 22 F.(2d) 131.

It is urged that the bank did not prove itself a creditor or party in interest entitled to file objections. The statements given by the bankrupt to the bank indicate that it was a creditor at the times they were given. The notes given by him were subsequently put in judgment by the bank. The officers of the bank testified that it was still a creditor. While there is some claim that the contract between the bank and the National Bank & Trust Company, whereby the latter took over many of the assets of the former, was not properly in evidence because of some informality in its being exhibited to the referee after the hearing, it tended to prove merely what the officers of the bank had already testified to, that the indebtedness of the bankrupt had not been taken over. A finding that the bank was not a creditor could not be sustained under the evidence.

What the appellant asks is that this court disregard the findings of the referee and the judge, and substitute its judgment for theirs in a case in which the evidence is in conflict.

This court will not reverse the conclusions of a special master sustained by the court below, when the evidence is conflicting, unless some obvious error or mistake is pointed out. Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664; Warren v. Keep, 155 U. S. 265, 15 S. Ct. 83, 39 L. Ed. 144; Collins Oil Co. v. Central Trust Co. (C. C. A.) 18 F.(2d) 474; Larson v. Crowther (C. C. A.) 26 F.(2d) 780; First National Bank v. Abbott (C. C. A.) 165 F. 852.

The judgment is affirmed.