## In re HARR.

(District Court, E. D. Missouri, N. D. February 10, 1906.)

### No. 96.

1. BANKRUPTCY—SPECIAL FINDINGS—REVIEW.

The findings of facts by a special master in a bankruptcy proceeding, while not as conclusive as the findings of a jury or trial judge sitting as a jury, are very persuasive, and will not be disturbed by the court if there is substantial testimony to sustain them and they do not appear to be influenced by any mistaken conclusions of law.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 929; Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—FINDINGS—EVIDENCE.

On an application for a bankrupt's discharge, evidence held to require a finding that the bankrupt obtained certain cattle on credit from the seller on a materially false statement in writing made to the seller by the bankrupt for the purpose of obtaining the property on credit.

3. SAME—DISCHARGE—PROPERTY FRAUDULENTLY OBTAINED—OBJECTIONS—PERSONS ENTITLED TO MAKE.

Bankr. Act July 1, 1898, c. 541, § 14, subd. b, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Cong. Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905. p. 684], authorizes a bankrupt's discharge, unless (subd. 3) he has obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit. Held, that the right to oppose a discharge on such ground was not limited to the creditor defrauded, but might be properly pleaded by any creditor of the bankrupt.

## In Bankruptcy.

To the petition of the bankrupt for a discharge objections were filed by certain creditors, which were referred to a special master to hear and take testimony and to report his findings of fact and conclusions of law. At the same time the claim of Wood Bros., one of the objecting creditors, was referred to the same special master to be determined whether it should be allowed against the estate. The questions raised by the specifications of objections are as follows: (1) That said bankrupt has committed an offense punishable by imprisonment, in that he knowingly and fraudulently concealed from his trustee in bankruptcy certain personal property in said specifications enumerated. (2) That said bankrupt did make a false affidavit in relation to his bankruptcy proceedings, in that he failed to include, willfully, knowingly, fraudulently, corruptly. and falsely, all of his property in the schedules filed in said bankruptcy proceedings by said bankrupt, a particular description of which said property is set out in the specifications of objections. (3) That said bankrupt had obtained property on credit from Wood Bros. upon a materially false statement in writing made to them for the purpose of obtaining such property on credit, a copy of which statement in writing alleged to have been made by the bankrupt is included in said specifications of objections to the bankrupt's discharge. (4) That the said bankrupt within four months preceding the filing of his petition in bankruptcy did transfer, conceal, or destroy his property, or permitted to be removed, destroyed, or concealed, his property with the intent to hinder, delay, or defraud his creditors, in that he failed to inventory a number of articles of personal property which are fully set out in the specifications. The special master in a very elaborate report found all the issues in favor of the bankrupt, and recommended that the discharge be granted. Exceptions to the report were filed by the objecting creditors.

A. R. Smith, O. S. & G. M. Callihan, and T. L. & L. J. Montgomery, for objecting creditors.

Joseph S. Tall and F. L. Schofield, for bankrupt.

TRIEBER, District Judge [1] (after stating the facts). The findings of facts by a special master who attended the examination of the witnesses, thus giving him an opportunity of seeing them testify, while not as conclusive as the finding of facts by a jury or a trial judge sitting as a jury, are very persuasive, and if there is substantial testimony to sustain his findings uninfluenced by any mistaken conclusions of law they will not be disturbed by the court hearing the cause on a transcript of the evidence without opportunities to see the witnesses, and thus to judge of their credibility in the same manner as was enjoyed by the master. For these reasons the findings on the objections made by the special master on the first, second, and fourth specifications of objections and on the claim of Wood Bros. will not be disturbed, although the testimony is conflicting, and but for the findings of the special master the court might have reached different conclusions.

As to the third specification, there is no substantial testimony to sustain the findings made by the special master. The undisputed testimony shows that on the 30th day of September, 1904, the bankrupt, for the purpose of purchasing 188 head of cattle, of the value of $3,190.60, on a credit of one year, made to Wood Bros. the statement in writing purporting to set out his financial condition. In this written statement he represented himself to be the owner of property worth several thousand dollars over and above all his debts and liabilities. Three weeks thereafter, on the 22d day of October, 1904, he filed his petition in bankruptcy, showing that he was hopelessly insolvent; his liabilities exceeding his assets more than $10,000. Wood Bros., in reliance upon the statement made by the bankrupt, sold and delivered the cattle to him, and accepted his note payable one year after date, with 7 per cent. interest, with no other security than a mortgage on the cattle sold and delivered. That practical business men such as Wood Bros. appear to be would have made this sale but for the false representations of Harr as to his financial condition is hardly to be believed. No experienced business man would sell any kind of property, especially property as perishable and fluctuating in value as cattle, on a credit of a year without other security than the cattle itself, unless he had reason to believe that the purchaser was solvent, and, in case of a deficiency upon a foreclosure of the mortgage, whether that deficiency be caused by the death or loss of some of the cattle or a depreciation of the values, they could collect the balance of their claim out of other property of the debtor. If they looked to the cattle only for their security, why was the written statement of Harr's financial condition demanded? The remark of Mr. Houston, the credit man of Wood Bros., that for their security they "relied mainly on the mortgage," which seems to have had a controlling influence on the findings made by the special master, proves nothing to the contrary. No doubt the mortgage was deemed the main security, but the court entertains no doubt what-

[1] By assignment from the Eastern District of Arkansas.

ever that had it not been for the belief that Harr was perfectly solvent, a belief justified by the written statement made by him to them, Wood Bros. would have refused to make the sale of the cattle, unless there would have been a cash payment made or security on other property given sufficient to protect them against any loss or depreciation in value of the cattle, or any accident likely to happen within a year. The finding of the court is that the bankrupt obtained the cattle on a credit from Wood Bros. upon a materially false statement in writing made to them by the bankrupt for the purpose of obtaining the said property on credit. This finding by the court and the special master's finding that the Wood Bros.' note had been fully paid off before the proceedings in bankruptcy were instituted, and for this reason they are not "a party in interest," which finding of the master is sustained by substantial evidence, and for this reason approved by the court, leaves but one question of law to be determined:

"Does the fact that property was obtained by a bankrupt on credit a short time before the proceedings in bankruptcy were begun upon false statements made in writing, for the purpose of obtaining such property on credit, prevent the granting of a discharge, although the debt had been satisfied before the proceedings in bankruptcy were instituted, and can any creditor other than the one defrauded plead that fact in opposition to the granting of the discharge?"

The provision of the amendment of 1903 applicable to this question is:

"Obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

In none of the previous bankruptcy acts, nor in any of the English bankruptcy acts, is any similar provision found. As the objections to the discharge were filed not only by Wood Bros., but also by the Clark County Savings Bank, which is an undisputed creditor, the application for the discharge, after eliminating Wood Bros., is opposed by "a party in interest" within the meaning of section 14b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]). In re Frice (D. C.) 96 Fed. 611.

The main question involved in this proceeding seems never to have been passed on by any court whose decision has been reported. The cases cited by counsel in Re Allendorf (D. C.) 129 Fed. 981, and in Re Levey (D. C.) 133 Fed. 572, have no bearing whatever on this question. In Re Allendorf the court found that the property had not been obtained on the false representations made by the bankrupt more than eight months prior to the purchase of the goods, and in Re Levey the points decided were that specifications of objections to a discharge can only be filed by a party in interest, and one not shown to be a creditor should state the facts showing how and why he is a party in interest, and it was further held that the trustee in bankruptcy, so long as the estate is unsettled and he is claiming and seeking to recover property from the bankrupt alleged to belong to the estate, is "a party in interest" within the meaning of section 14 of the bankrupt act, and may oppose the discharge. It will be noticed that the language

used in the amendment of 1903 to section 14b of the act (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]) is "obtained property on credit from any person," etc.

To sustain the contention of the learned counsel for the bankrupt, the court would have to interpolate after the word "person" the following: "Who is a creditor of the bankrupt at the time of his adjudication"—or add the proviso, "That the bankrupt estate was injuriously affected thereby." This is not permissible; courts cannot legislate under our system of government. They can only enforce or construe the laws as enacted by the legislative department. One of the main objects of the bankruptcy act is to protect unfortunate, but honest, debtors. Fraudulent debtors are not intended to be protected, nor to escape payment of their just liabilities. The bankruptcy act as originally passed did not contain this provision. No doubt the experience after the enactment of the original bankruptcy act in 1898 caused Congress to make this amendment in order to prevent bankrupts to obtain property on credit upon false representations from enjoying the benefits of the act and receiving a discharge from their liabilities. When the intention of the lawmakers is clear, the duty of the courts is to carry it into effect.

The fifth exception of the objecting creditors to the findings and conclusions of the special master will be sustained; the others overruled.