McKIBBON, DRISCOLL & DORSEY et al. v. HASKELL.

In re HASKELL.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1912.)

No. 3,709.

*(Syllabus by the Court.)*

BANKRUPTCY (§ 409*)—GROUNDS OF REFUSAL TO DISCHARGE—FAILURE TO KEEP BOOKS OF ACCOUNT.

Every one is presumed, in the absence of countervailing proof, to intend the natural and inevitable consequences of his acts.

Where a merchant, who had conducted his business in a small town for many years, where he had kept books of account of some kind, moved with a stock of merchandise, worth about $2,000 and a debt of about the same amount, to a city, kept no books of account after his removal, but within four months bought more than $8,000 worth of new merchandise, sold more than $1,300 worth thereof in bulk at 25 per cent. less than cost, and more than $462 worth thereof in bulk at 10 per cent. less than cost, and paid with the proceeds thereof relatives and friends, from whom he had borrowed more than $1,700, and went into bankruptcy with a stock scheduled at $2,415.13 and debts to the amount of more than $8,000, held, the legal presumption that the bankrupt intended, by failing to keep books, the natural effect thereof, the concealment of his financial condition, was so strongly supported by these facts as to overcome the persuasive presumption of the contrary finding of the chancellor below, and his discharge must be denied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

Appeal from the District Court of the United States for the Southern District of Iowa.

In the matter of the bankruptcy of Samuel Haskell. From an order granting a discharge to the bankrupt, McKibbon, Driscoll & Dorsey and others appeal. Reversed and remanded.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles F. Maxwell (N. T. Guernsey, on the brief), for appellants.
Jerry B. Sullivan (Sullivan & Sullivan, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal of creditors from
an order granting a discharge to the bankrupt, Samuel Haskell.
There are several specifications of error, but in our view of the case
it will be necessary to consider but one, and that is that the court
below found from the record that the bankrupt did not, with intent
to conceal his financial condition, fail to keep books of account or
records from which his financial condition might be ascertained.
Haskell was a merchant engaged in retail trade in shoes, clothing,
and gents' furnishing goods from 1895 until about December 14,
1906, when he was adjudged a bankrupt. He embarked in his busi-
ness in Woodward, a small town in the state of Iowa, about 1895,
with a capital of $400, with which he purchased a stock of goods of
the value of about $600, and he continued in business in that town
until August, 1906, when he moved to Des Moines, Iowa. In Janu-
ary, 1905, he took an inventory of his stock, and found that he had
merchandise worth about $5,000 and that he owed his bank $2,000
to $3,000. He never took an inventory thereafter. When he moved
to Des Moines he paid the bank, but owed for merchandise about
$1,200, and to relatives and friends, from whom he had borrowed
money, about $1,796, in all about $3,000, and he had a stock of mer-
chandise worth from $1,300 to $3,000, and some book accounts and
fixtures. In the four months between his removal to Des Moines
in August, 1906, and his adjudication in bankruptcy in December of
that year, he purchased new goods of the value of $8,192.39, $3,000
of the purchase price of which was not due when he was adjudged
a bankrupt. During these four months he sold in bulk out of this
merchandise, at a discount of 25 per cent. from the cost price there-
of, a lot selected by the purchaser, for which the bankrupt received
$979.90, and a second lot at a discount of 10 per cent. from the cost
price, from which he received $421, he paid all the friends and rela-
tives from whom he had borrowed money with the proceeds of these
and other sales, and went into bankruptcy with a stock of merchan-
dise which he scheduled at $2,415.43 and debts to the amount of more
than $8,000. He kept no books of account whatever during these
four months. At one time he testified that he kept none in Wood-
ward. At another time he testified as follows;

"Q. At the time you came down here, you owed more than you were worth?
You brought down here about $3,000 worth of odds and ends? A. I had
book accounts, you know; fixtures. I think I had more than I owed. Q.
How much book account did you have? A. I could not tell for sure how
much it was, for in moving they lost my book account. You see the way it
was, when I had everything packed and put in the car, I sold my safe there
and had to pack everything in a little box in the safe, and I left it with the
drayman to pack. I left the books in the store, and gave the key to the dray-
man to pack this along with the other stuff in the store Monday morning.
This was Saturday night that I sold the safe. The agent at the depot claims
that he opened up the car and saw it off, but I never got the book. I was

over there looking for it twice, but I never found it. There were notes in it, and book accounts, and a few such things that belonged to me in the cash register, and book accounts we had from the old register there, that I never got. Q. What kind of books did you keep? A. It was a kind of file of bills, payment, and cash register, and there were cards inside of the leather, and the initial and the little cards I mentioned. Some had no credit. They had the charge upon it, and the party's name, and that was torn up and put on the credit, the amount, and how much the number of the ticket was, and it was put in between that card. It was put in the files and lost. Q. It was what the grocery man would call a short account system? A. Yes; and some small accounts had been running on my ledger. Q. Have you that ledger? A. My new ledger I have, but not the old one. That was one thing I had the safe for, was the ledger."

The rational, if not the unavoidable, deduction from this testimony, is that the bankrupt had and kept a ledger while he was at Woodward; that in this ledger he entered the state of many, if not all, of his accounts, for, if he had not done so, the ledger would not have been so valuable to him; that one of his reasons for owning a safe would have been to preserve this ledger; that he also had another account book, in which he kept upon cards, or upon the book itself, or upon both, statements of some if not all of his accounts. Whether or not the account books and files of accounts which he kept at Woodward correctly portrayed his financial situation may be questionable; but this evidence is conclusive to the effect that he kept at least two books of account, a ledger and an account book, before he moved to Des Moines, that he lost both of them when he left Woodward, that he never kept any books of account whatever thereafter, never entered on any account book or record any account or memorandum concerning any of his purchases of any of the $8,-192.39 worth of new merchandise which he bought, of his sale of more than $1,300 worth of these new goods in one lot at 25 per cent. less than their cost, of his sale of more than $460 worth of them at 10 per cent. less than their cost, of any of his other transactions whereby he disposed of more than $6,000 worth of goods in four months, of his payment of any of his debts to the amount of more than $1,700 to the relatives and friends from whom he had borrowed money, or of any of his other financial transactions after he went to Des Moines.

The bankruptcy act, as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. Stat. Supp. 1907, § 1026]), directs the discharge of a bankrupt unless he has—

"(2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records, from which such condition might be ascertained."

The bankrupt failed to keep such books of account, or records, or any books of account, after he moved to Des Moines. Prior to that time he had kept books of account, a ledger and an account book. With what intent did he fail to keep books of account at Des Moines? That failure concealed his extraordinary purchase of new merchandise on credit, concealed his sales of this merchandise in bulk at less than cost and the use of its proceeds to pay his relatives and friends, concealed his financial condition even from himself, for

he testified that he did not and does not know what his condition actually was.

The act of Congress proclaims the presumption and expectation of the law that honest merchants will keep account books which will disclose their true financial condition. In the absence of prevailing evidence to the contrary, every man is presumed to intend the natural and inevitable consequence of his acts, and the evidence which has been recited so strongly supports this legal presumption that it has overcome the persuasive presumption of the finding of the court below to the contrary, and has convinced that the bankrupt in this case failed to keep account books at Des Moines with intent to conceal his financial condition. In re Hanna, 168 Fed. 238, 93 C. C. A. 452; In re Schachter (D. C.) 170 Fed. 683; In re Koelle (D. C.) 171 Fed. 257; 2 Loveland on Bankruptcy (4th Ed.) 1317, 1320.

The order granting the discharge must accordingly be reversed, and the case must be remanded to the court below, with instructions to deny the application for the discharge; and it is so ordered.