### In re SHRIMER.

#### (District Court, E. D. North Carolina. January 11, 1916.)

#### No. 408.

i. Bankruptcy ⬉409—Discharge—Grounds for Denial—Failure to Keep Books.

Bankr. Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550, as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (Comp. St. 1913, § 9598) provides for the denial of a discharge where the bankrupt with intent to conceal his financial condition has destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained. A bankrupt in business for three years in a large commercial center, who owed about $7,500, and whose goods on hand were inventoried at $4,000, and who had a bank deposit and drew checks, kept no sales book, cash book, or expense book, and turned over to the trustee no books whatever, except a check book, a pass book, and some canceled checks and bills outstanding, and some bills collectible. His only explanation of his financial troubles and the disposition made of the goods purchased, or the proceeds of their sale, was that he had gambled, and had lost several hundred dollars gambling. *Held*, that the conclusion was natural, and almost irre-

sistible, that his failure to keep books was with intent to conceal his financial condition, especially as a man is presumed to intend the logical and inevitable results of his conduct.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. ⟨⟩409.]

2. BANKRUPTCY ⟨⟩414—DISCHARGE—OBJECTIONS—BURDEN OF PROOF.

On objections to a bankrupt's discharge on the ground that he has destroyed, concealed, or failed to keep books of account or records from which his financial condition might be ascertained with intent to conceal such condition, the objecting creditor has the burden of establishing the unlawful intent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ⟨⟩414.]

3. BANKRUPTCY ⟨⟩414—DISCHARGE—OBJECTIONS—EVIDENCE.

On objections to a bankrupt's discharge, the intent with which he failed to keep books may be shown by resorting to the same methods of proof as for any other fact; and, being a fact peculiarly and, so far as direct evidence goes, exclusively within the knowledge and keeping of the bankrupt, the court may resort to inferences from conceded or established facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ⟨⟩414.]

4. BANKRUPTCY ⟨⟩400—EXEMPTIONS—SETTING APART.

Bankr. Act July 1, 1898, § 6 (Comp. St. 1913, § 9590), provides that that act shall not affect the allowance to bankrupts of exemptions prescribed by the state laws. Section 47 (section 9631) requires trustees to set apart the bankrupt's exemptions and report the items and estimated value to the court as soon as practicable after their appointment. General Order 17 (89 Fed. xix, 32 C. C. A. xix) requires the trustee, within 20 days after receiving notice of his appointment, to make a report of the articles set off to the bankrupt. *Held*, that the bankrupt's exemptions should have been set apart to him from his property, instead of paying the amount thereof to him in cash from the proceeds of a sale of the property at about 25 per cent. of its inventoried value.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ⟨⟩400.]

5. BANKRUPTCY ⟨⟩415—APPLICATION FOR DISCHARGE—CERTIFICATION TO JUDGE—DELAY.

Under the provision of the Bankruptcy Act requiring every step in the administration and closing of the estate to be taken with all reasonable dispatch, a delay of several months in certifying to the judge an application for a discharge to which a creditor filed objections was unreasonable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–708, 719, 723, 724, 726, 728; Dec. Dig. ⟨⟩415.]

In Bankruptcy. In the matter of G. A. Shrimer, bankrupt. The bankrupt filed his petition for discharge, to which the Fabian Manufacturing Company, one of his creditors, filed objection, and in support thereof filed four specifications, and the evidence was taken by the referee and certified to the judge. Petition for discharge denied.

D. H. Gladstone, of Durham, N. C., for petitioner.
R. H. Sykes, of Durham, N. C., for creditor.

CONNOR, District Judge. [1] The specifications filed by the creditors, while separated, constitute the charge that the bankrupt has "with intent to conceal his financial condition, destroyed, concealed or failed

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to keep books of account or records from which such condition might be ascertained." Bankruptcy Act, § 14b (2); Collier, Bankruptcy (10th Ed.) 308; amendment 1903. Mr. Collier discusses the purpose and the effect of the amendment to this section. Page 345. The evidence shows that the bankrupt began business in the city of Durham, N. C., three years prior to his adjudication; that he owes about $7,500. His trustee found on hand goods inventoried at $4,000, which he sold for $1,078, and from this he paid the bankrupt $500, leaving in his hands for the creditors, after paying the cost of the proceeding, 5 per cent. of their debts. This revelation calls for explanation before the bankrupt is entitled to the benefit of a statute enacted for the relief of unfortunate and honest debtors.

"One of the main objects of the Bankruptcy Act is to protect unfortunate, but honest, debtors. Fraudulent debtors are not intended to be protected, nor to escape payment of their just liabilities." In re Harr (D. C.) 143 Fed. 421.

The bankrupt, upon his examination, says that he kept no books; never kept any books; when he paid a bill he put it in the box file; has no old check stubs; lost money gambling, does not know how much, several hundred dollars; has been gambling ever since he came to Durham. The trustee says that, when he made a demand upon the bankrupt for his books, he received a check book, also a pass book, but no others; made an examination, but could not arrive at any result, because he had no books, papers, or information, except some canceled checks and bills outstanding and "bills collectible." It was absolutely impossible to determine the actual condition of the estate. Before the bankruptcy proceedings were instituted he saw some advertisement that bankrupt was selling off all goods at a reduced price; found no sales book, cash book, or expense book. While the trustee was cross-examined at great length, the foregoing constitutes the substance, in essential respects, of the evidence. That the bankrupt kept no books, in any reasonable sense of the term, from which his financial condition could be ascertained, is manifest. This, however, is not sufficient to sustain the objection to granting the petition for discharge. The act, as amended, requires that it be found that his failure to keep such books shall be "with intent to conceal his financial condition."

[2, 3] The objecting creditor carries the burden of establishing the unlawful intent. It is well settled, both upon reason and authority, that when intent becomes an essential element in a judicial investigation the quest for its existence is to be made by resorting to the same methods of proof as for any other fact. As it is a fact peculiarly and, so far as direct evidence goes, exclusively within the knowledge and keeping of the party charged with the wrongful conduct, of necessity the court may resort to inferences from conceded or established facts, the probative value of which will depend largely upon the reason of the thing. It is customary for honest merchants, having a regard for the success of their business and their commercial credit, to make and keep some record—entries in books, or at least memoranda—showing the course of the business. The form, manner, method of doing this depends largely upon the character, volume, etc., of the business; the accuracy of such records will depend largely upon the experience and

intelligence of the person making them. So their absence, or character, may be accounted for by reference to the same conditions. The only facts disclosed by the record are that the bankrupt was, for three years, in one of the largest of our commercial centers, conducting the business of buying and selling goods and merchandise; it does not appear that he was ignorant or illiterate; his business involved carrying a stock of at least $4,000 and contracting an indebtedness of $7,500; he made deposits in a bank and drew checks. Certainly his creditors were entitled to assume that, in the event of his insolvency, they would find some record of the manner in which his business was conducted, showing the amount of his purchases, sales and expenses, and how his insolvency came about—what disposition he made of the goods, or the proceeds of their sale. It falls far short of meeting this reasonable expectation to say that, with a payment of 5 per cent. of their debts, the bankrupt, with half the proceeds of their property in his pocket as his exemptions, gives no other account of his "business troubles" than that he has lost "several hundred dollars gambling" and "has kept no books."

There is a rule of reason—sound in morals and in law—that a man is presumed to intend the logical and inevitable results of his conduct. His creditors were entitled to know his financial condition and to ascertain it from an examination of his books or records of his business; this he must have known. The process of reasoning from the admitted facts, unexplained, which brings the mind to the conclusion that his failure to keep books was with the "intent to conceal his financial condition," is natural and almost irresistible. The result of the thought of the courts is well formulated by Mr. Collier. He says:

"The act proclaims the presumption and intent of the law that honest merchants will keep account books which will disclose their true financial condition. If the evidence shows that the business was conducted without books of account, so that nothing could be ascertained as to the bankrupt's purchases and sales, or the disposition of the proceeds of such sales, the intent to conceal the financial condition will be presumed." Bankruptcy, 348.

"A failure to show by books a large shrinkage of assets during a short period of time may prevent a discharge." Id.

In Re Koelle (D. C.) 171 Fed. 259, after discussing the evidence in regard to the failure to keep books, it is said:

"Prima facie, at least, a man must be held to intend the natural and probable consequences of his acts, and the inevitable consequence of this omission was to conceal his financial condition. The presumption of such an intent may not be conclusive, but it has not been met by the testimony that was offered before the referee."

Here the only explanation of the so-called "failure" is the loss of "several hundred dollars in gambling." This is entirely insufficient to rebut the natural and logical inference, which should be drawn from the bankrupt's failure to keep books. It rather strengthens the inference and sustains the conclusion.

[4] It appears that the bankrupt's goods were sold for about 25 per cent. of their invoice, and of this amount $500 in cash was paid to him on account of his exemptions, thus absorbing about $2,000 of the in-

voice value of his property. This is not in accordance with the law. The bankrupt is entitled to the exemptions allowed to him by the state Constitution. Bankruptcy Law, § 6. It is the duty of the trustee to set apart his exemption from his property, as soon as practicable after his appointment. Section 47. By General Order 17 (89 Fed. xix, 32 C. C. A. xix), his duties in that respect are further prescribed. While the question is not presented, I deem it appropriate to call attention to the irregular procedure and its effect upon the rights of the creditors.

[5] Although this petition was filed several months since, it was not certified to the judge until January 4, 1916. This was an unreasonable delay. The act prescribes that every step in the administration in closing the estate shall be with all reasonable dispatch.

The petition for discharge is denied.