### In re CHASS.

(District Court, W. D. Pennsylvania. September, 1916.)

BANKRUPTCY &#8658;414(1)—DISCHARGE—FAILURE TO KEEP BOOKS OF ACCOUNT—INTENT.

> Mere proof of failure of bankrupt to keep books of account, where they were necessary and proper, raises the presumption, requiring rebuttal, that it was with intent to conceal his financial condition; for which, under the statute (Act July 1, 1898, c. 541, 30 Stat. 544), discharge is to be refused.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. &#8658;414(1).]

In Bankruptcy. In the matter of the bankruptcy of one Chass. On exceptions to report of referee. Exceptions sustained, and discharge refused.

Ben Paul Brasley, of Pittsburgh, Pa., for bankrupt.
Alpern & Seder, of Pittsburgh, Pa., for trustee.

ORR, District Judge. This matter comes before the court upon exceptions to a report of the referee recommending a discharge of the bankrupt. The creditors' objection to the discharge is that the bankrupt, with intent to conceal his financial condition, failed to keep books of account or records from which such condition might be ascertained. The referee recommended that the discharge be granted.

The bankrupt began business on June 1, 1913, and was adjudicated a bankrupt prior to March 11, 1915. He was engaged in the business of selling "Ladies and Gents' Furnishings." He began business with about $4,500 as capital. According to his testimony, for the balance of the year 1913 he broke "about even." In the year 1914, he lost from $9,000 to $10,000. The stock on hand at the time the petition in bankruptcy was filed he estimated at $8,500.

The foregoing is taken from the testimony of the bankrupt. He further testified that he kept no books of account, but admitted that he had a memorandum book in which he kept a memorandum of wages due employés and of some borrowed money. The capital with which he started business in 1913 was derived by him from the sale of a cigar business, in which business he had kept books of account. Of the books kept in the cigar business, he delivered one containing a memorandum of accounts receivable, arising from the conduct of the cigar business, to his trustee upon demand by the latter. The trustee never received from the bankrupt any papers or invoices or bills or files. The bankrupt's explanation of his losses is most unsatisfactory. It is necessarily uncertain and inexact because of his failure to keep books. The present is a marked example of the difficulty a bankrupt may encounter by his failure to keep books.

Looking at the testimony in every light most favorable to the bankrupt, this court is unable to agree with the learned referee in his conclusions. The necessity of keeping books in a mercantile business, such as that in which the bankrupt was engaged, must be apparent to every one of intelligence. It must have been apparent to him because he had kept books in the business in which he had previously been engaged. The Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 544) itself contemplates that books should be kept by those who might benefit by its provision where such books were necessary factors in the conducting of business. Had it not been so, the failure to keep books would not have been expressed as a reason for refusing a discharge when coupled with an intent to conceal the merchant's financial condition. It is apparent, too, that the "intent" denounced by the present law is not intensified by the word "fraudulent" as it was in the act as originally passed. The reason for the omission of the word "fraudulent" in the amendment to the act cannot be deemed as purposeless. The effect is to relieve the objecting creditors from the proof of fraudulent acts which disclose "fraudulent intent." As the act stands to-day, it is but necessary for the creditor to prove the failure of the bankrupt to keep books of account where such books of account were necessary and proper. And when satisfactory evidence of such fact is produced, the law determines the intent to have existed because the bankrupt must be presumed to have intended to conceal his financial condition if such were the natural and probable consequences of his failure to keep books. Even in the criminal courts, where intent must be proven by the government, it is in many cases announced as a doctrine of the law that every man is presumed to have intended the natural and probable consequence of his act.

There is nothing in the testimony before the referee which must be held to be sufficient to rebut such presumption in the case at bar.

This case is not unlike that of McKibbin, Driscoll & Dorsey v. Haskell (8th Cir.) 28 Am. Bankr. Rep. 588, 198 Fed. 639, 117 C. C. A. 343. See, also, In re Koelle (D. C. Pa.) 22 Am. Bankr. Rep. 515, 171 Fed. 257.

The decision of the referee must be reversed, the exceptions to his report must be sustained, and the discharge of the bankrupt must be refused.