In re SCHULTZ.

(Circuit Court of Appeals, Second Circuit. March 14, 1918.)

No. 185.

BANKRUPTCY ☞414(3)—DISCHARGE—FAILURE TO KEEP ACCOUNTS—EVIDENCE.
    Evidence *held* to sustain a finding that the bankrupt failed to keep books for the purpose of preventing his creditors from ascertaining his financial condition, and to sustain an order denying his discharge.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Max J. Schultz. From an order denying his discharge, the bankrupt appeals. Affirmed.

Appeal from an order of the District Court (Manton, J., presiding), upon the report of the special master denying a discharge of the bankrupt. The bankrupt was adjudicated on May 3, 1915, and on April 1, 1916, filed his petition for a discharge. George S. Mawhinney, a creditor, filed specification of objection on May 17, 1916, alleging that the bankrupt, with intent to conceal his true financial condition, had failed to keep books of account, and that he had committed a crime punishable under the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) in concealing certain assets, and in collecting a number of customers' accounts just before the filing of his petition, which he failed to put into his schedules. The special master found that the charge of concealment was not proven, but that the bankrupt had failed to keep books with the purpose of preventing the creditors from ascertaining his financial condition, and that he had sworn falsely in his schedules touching his assets.

It appeared upon the hearings that the bankrupt did business in a small way, and for his books kept only a journal and a ledger, in which were entered the goods which he had sold and the accounts due him. His debts he swore that he kept in the form of bills on a bill hook, but none were produced. From the journal or cashbook Levy, his assistant, posted the accounts receiv-

able into the ledger. Among these accounts receivable were some five or six, aggregating about $313, on which he received five notes on the eve of bankruptcy, which he preferentially turned over to Brinn, a large creditor. These accounts were never posted in the ledger, though the word "Paid" appears opposite to them in the journal, or at least some entry of the receipt of the notes. The schedules were taken from the ledger and omitted any mention of these accounts.

Robert P. Levis and Maurice L. Shaine, both of New York City, for appellant.

Thomas G. Prioleau, of New York City, for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The ledger was incomplete, because the accounts on which the notes had been paid were not posted. Why were they not? The bankrupt suggests that it was because they had been paid by the notes; but we have no means of knowing what the notes were, except that Brinn, a witness not impressive even on paper, says they amounted to $300. He cannot produce any documentary corroboration of the amount. The six accounts appear to aggregate about $313 (folios 210, 214, 215), and we have no means of telling how much was left due upon them; perhaps they had been wholly compromised by the notes. Prima facie some part remained due, though it is left uncertain. That makes no difference, however, on the specification for failing to keep books, however it might on the specification for false schedules.

The ledger being incomplete, the question remains of intent, a question we do not nicely scrutinize, after the special master and the District Judge have passed upon it. Was there any evidence of intent? We think there was. The items not posted all touched a transaction which was open to inquiry and rescission, the preference of Brinn's claim. So far as appears, these were the only accounts not posted, and the suggestion at once is that the omission was deliberate and to cover the preference. It is said that this was a foolish device, since the journal showed them anyway; but that touches the weight of the proof. Besides, knaves may be also fools. The schedules at least followed the ledger; perhaps the plan at the outset was that they should. The acknowledged facts fit with a deliberate suppression.

The bankrupt did nothing to remove suspicion; his printed word goes far to confirm the special master's conclusions; he was evasive, shifty, uncommunicative, apparently dishonest. If this arose from his lack of English, he should have been examined through an interpreter. On the record the special master was more than justified in his conclusion that the omissions were deliberate.

Order affirmed, with costs.