# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

STERNBURG v. M. COHEN & CO. et al.

(Circuit Court of Appeals, First Circuit.    December 18, 1918.)

No. 1375.

1. BANKRUPTCY ⬤⟹228—REFEREE—FINDING.
    No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by ·a bankruptcy referee; but, as his position and duty are analogous to those of a special master, the rules applicable to a master's report apply to a referee's finding of fact, and if it is based on conflicting evidence, involving credibility, and the referee has heard the witnesses, the District Judge should not disturb his finding, unless there is most cogent evidence of mistake.

2. BANKRUPTCY ⬤⟹228—REFEREE—FINDING.
    A finding of the referee, which was mainly based on deduction from established facts, and which was to the opposite effect of an earlier report, may well be disregarded by the trial court.

3. BANKRUPTCY ⬤⟹414(3)—DISCHARGE—FAILURE TO KEEP BOOKS.
    On petition of a bankrupt for discharge, *held* that, under the evidence, a denial of the discharge, on the ground that, with intent to conceal his financial condition, the bankrupt concealed, destroyed, and failed to keep books, was warranted.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

In the matter of Israel Sternburg, bankrupt.  On objections of M. Cohen & Co. and others, creditors, the petition of the bankrupt for discharge was denied, and from the order refusing discharge (249 Fed. 980) he appeals.  Affirmed.

Charles H. Dow, of Boston, Mass. (Samuel Sigilman, of Boston, Mass., on the brief), for appellant.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.  This is an appeal from an order of the District Court refusing the bankrupt his discharge.  The appellees

set forth four objections to the petition for discharge, the first of which is:

"That with intent to conceal his financial condition he destroyed, concealed and failed to keep books of account or records from which such condition might be ascertained."

The District Court sustained the first objection, and on that ground refused the discharge. The remaining objections were not passed upon.

The essential facts are as follows: On December 19, 1916, an involuntary petition was filed by three friendly creditors against Israel Sternburg. Prior to adjudication terms of composition were offered which were referred to the referee to ascertain and report the facts. The referee reported against the offer, and the composition was not confirmed. The bankrupt's petition for discharge was referred to the same referee to ascertain and report the facts. In the referee's report concerning the discharge he incorporated by reference the report made by him in relation to the offer of composition.

It appeared that the bankrupt conducted a retail clothing store on Castle street, Boston, selling wholly for cash, his receipts averaging from $200 to $300 a week; that his expenses for rent, light, help, and his own drawing account of about $60 per week, were $125. In the spring of 1916 the bankrupt got hard up for money, and went to everybody he could to raise it, paying money lenders at the rate of one per cent. per month. He borrowed from relatives and others with whom he long had had friendly relations. As to the lack of books, the referee found in his first report, filed June 19, 1917, as follows:

"Although the bankrupt had some years before kept a book of account, I do not regard his failure to keep books in connection with his business conducted on a cash basis as sufficient to sustain the specification, but taken in connection with his failure to account for or deposit moneys after November 13, 1916, except for the one deposit of $307 on December 1, I regard such conduct as evidencing an intent to conceal his true financial condition. The transfer of a policy of insurance to his wife, on which he subsequently paid a premium in a substantial sum, the purchase for his wife of a valuable garment even after the filing of the petition in bankruptcy and payment therefor out of funds of which he was trustee for his creditors, and also the loss of at least $50 of such moneys in playing cards with Simons and Einstein, and the giving of a note to his nephew, Lew Goldman, for $250, the same being for certain commissions on sales extending over a long period on a percentage basis, which the bankrupt himself seemed in some doubt about, are important upon the question of good faith and proper conduct, which are essential elements in cases where composition is offered to one's creditors."

In his second report, filed March 5, 1918, the referee, dealing with substantially the same specifications, found as follows:

"As to the others (i. e., the specifications), as pointed out in my former report, there was here a clear preparation for bankruptcy by the transfer of a policy of insurance to his wife, and preferential payments (for, while the petition was not voluntary, it was friendly), but the policy had little or no paid-up value, and its transfer was a matter of record. Preferential payments, though in this case, I believe, clearly recoverable, and furnishing the basis for my recommending that the proposed composition was not for the best interests of creditors, will not in and of themselves bar a discharge.

"On the remaining specifications it comes to the matter of whether a cash

business, such as this was, requires the keeping of books, as the whole contention on the score of concealment of assets has to do with the disposition of a sum not exceeding $100, and probably even less, being the difference between undoubted expenses and receipts which have now to be established by oral evidence. It has been impossible for me to regard the transactions of this bankrupt in any other light than that of a man struggling to get out of his difficulties, and that there was from start to finish no actual intent to conceal his true financial condition. I think the case clearly distinguishable from In re Kaplan (D. C.) 245 Fed. 222, both as to the conduct of the bankrupt before as well as after the petition was filed."

The District Court at the conclusion of the arguments gave oral judgment (thereafter reduced to writing) as follows:

"It is evident that we are dealing here with a bankruptcy which was essentially fraudulent; and the bankrupt's acts and omissions are to be considered with that fact in mind. The failure was carefully prepared for, weeks ahead. Up to November 13th there had been deposits of more or less regularity in the bank. Beginning on that date they entirely ceased, with one exception (said to have been of borrowed money), which was made to meet a note coming due. As to how much money was taken in during the five or six weeks between that time and the appointment of the receiver on December 29, 1916, there is not a scrap of written evidence, and no evidence at all except the oral testimony of the bankrupt. He was carefully forelaying for bankruptcy during this interval, paying up the notes on which his brothers-in-law had indorsed, giving bonds (which would be avoided by bankruptcy), with them or other relatives as sureties, to dissolve attachments, etc. Although the gross receipts of his business were about $250 a week, and he saw failure ahead, he kept absolutely no accounts of any kind. Even after the petition was filed he continued to make preferential payments to protect relatives, and to use money which he then had for gambling at cards. The amount so lost was not, on his own statement, large, but it was substantial. See In re Shrimer (D. C.) 228 Fed. 794, 36 Am. Bankr. Rep. 404.

"In spite of the learned referee's finding to the contrary, I cannot escape the conclusion that the failure to keep anything in the way of accounts or memoranda during the important interval just preceding the failure was associated in the bankrupt's mind with his intention to go into bankruptcy in such a way as to advantage his relatives and himself at the expense of his creditors, and was, in part at least, for the purpose of having no statements or accounts which would prove troublesome. See McKibbon v. Haskell, 28 Am. Bankr. Rep. 588, 198 Fed. 639, 117 C. C. A. 343 (C. C. A. 8th Cir.).

"The filing of the petition, while not divesting the bankrupt of title to his property, constitutes him in effect a trustee for the benefit of his creditors from that time until adjudication when that follows. Bailey, Trustee, v. Baker Ice Machine Co., 239 U. S. 268, 275, 276, 36 Sup. Ct. 50, 60 L. Ed. 275. Granting that he has power to dispose of his property in the ordinary course of business in the intervals, and even that he may do so, by making preferential payments not tainted with actual fraud (but without so deciding), he certainly has no right to use his property for gambling after the petition is filed; and it seems probable that property so used is fraudulently conveyed within section 14; but it is unnecessary to decide this point."

[1] In behalf of the bankrupt it is urged that this court should follow the second finding of the referee and reverse the finding of the District Court. Conceding that "no precise quantitive weight is in this district assigned to the findings of fact made by the referee" (In re Swift [D. C.] 118 Fed. 348), the appellant contends nevertheless that, in so far as the referee's findings depend upon the credibility of witnesses seen and heard by him, that finding should not be disturbed unless he is clearly in error. We are content to follow the doctrine laid

down by the Circuit Court of Appeals for the Sixth Circuit in Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184, in an opinion by Circuit Judge (afterwards Justice) Lurton:

"No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by a bankrupt referee. His position and duties are analogous, however, to those of a special master directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's finding of fact must be substantially that applicable to a master's report. Tilghman v. Proctor, 125 U. S. 137, 8 Sup. Ct. 894, 31 L. Ed. 664; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Emil Kiewert & Co. v. Juneau, 78 Fed. 708, 24 C. C. A. 294; Tug River Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415. Much in both cases must depend upon the character of the finding. If it be a deduction from established fact, the finding would not carry any great weight, for the judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee. But, if the finding is based upon conflicting evidence involving questions of credibility and the referee has heard the witnesses, much greater weight naturally attaches to his conclusion, and the weight of authority is that the district judge, while scrutinizing with care his conclusions upon a review, should not disturb his finding unless there is most cogent evidence of a mistake and miscarriage of justice. Loveland on Bankruptcy, § 32a; In re Swift (D. C.) 118 Fed. 348; In re Rider (D. C.) 96 Fed. 811; In re Waxelbaum (D. C.) 101 Fed. 228; In re Stout (D. C.) 109 Fed. 794; In re Miner (D. C.) 117 Fed. 953."

[2] In the case at bar the question for determination is mainly, if not entirely, one of deduction from established facts. It does not turn chiefly upon questions of credibility arising in conflicting evidence. Moreover, the referee's conclusion in his second report that in this case "there was from start to finish no actual intent to conceal his [the bankrupt's] true financial condition," may be regarded as no more than offsetting his earlier conclusion to the opposite effect; nor does his later report set forth any very satisfactory reason for his changed view concerning the bankrupt's intent. Under these circumstances, the district judge was well warranted in drawing his own conclusions from the admitted facts and evidence, little influenced by the last conclusion of the referee.

[3] It is beyond dispute that the bankrupt against whom the friendly petition was filed in December, 1916, found himself in embarrassed circumstances as early as the spring of that year. It is a reasonable inference, as found by the District Court, that he had bankruptcy in contemplation for a considerable time before the friendly petition was filed. During that period he did what he could to exonerate the relatives from whom or on whose credit he had borrowed. He transferred an insurance policy to his wife on November 2, 1916, and thereafterwards, on or about December 10, 1916, paid a substantial sum as an overdue premium on that policy. Apparently that sum was $137; the record is not entirely clear as to the amount. Even after the the filing of the petition in bankruptcy he indulged himself in friendly games of poker with his relatives, losing to them at least $50 of money which obviously belonged to his creditors. Under these circumstances, inferences in favor of his good faith in changing his meager bookkeeping methods are not easily drawn.

While, as the referee finds, his mere failure to keep ordinary books of account for a cash sales business would not in and of itself be a bar to his discharge (compare In re Hodge [D. C.] 205 Fed. 824, 826, and In re Newbury and Dunham, 209 Fed. 195, 126 C. C. A. 207), yet the bankrupt's failure to make after November 13 any deposits in the bank account, which he did keep, is persuasive evidence that he intended thereby to conceal his real financial condition. A deposit book and a check book showing the disposition of cash may be most important means of determining the financial condition of a small merchant carrying on a business like that of the bankrupt. There is no adequate explanation of his failure after November 13 to make deposits as he had hitherto done. It is argued that he used the proceeds of his cash sales mainly in paying seven notes aggregating $1,625. Undoubtedly these payments would account for part of the proceeds of the sales; but the very fact that he paid these in cash instead of by check from deposits regularly made warrants an inference that he may have received, as the appellees claim, sums substantially in excess of the amounts thus accounted for. At any rate, as found by the District Court, his utter failure during this critical period, when he was in contemplation of bankruptcy, either to make any deposits from the proceeds of sales, or by any other method of bookkeeping to keep track of the amount of money which he received, and his disposal thereof, fully sustains the finding of the District Court "that his failure to keep books was with intent to conceal his financial condition."

The finding of the District Court sustaining the first specification and denying the bankrupt his discharge must be affirmed.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.