In re GOTTLIEB.

Appeal of ROXFORD KNITTING CO.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 69.

1. BANKRUPTCY ⫞⟶460—NECESSARY PARTIES TO APPEAL FROM ORDER CONFIRMING COMPOSITION.

To an appeal from an order confirming a composition by a creditor, who objected on grounds which go to bankrupt's right to a discharge, other creditors are not necessary parties.

2. BANKRUPTCY ⫞⟶455—APPEAL LIES FROM ORDER CONFIRMING COMPOSITION.

An order confirming composition is appealable.

3. BANKRUPTCY ⫞⟶414(1)—BURDEN OF PROOF ON OBJECTION TO DISCHARGE.

A creditor, objecting to discharge, starts out with the burden of proving by a fair preponderance of evidence the facts alleged, and which, unexplained, warrant an inference of the requisite intent; but, when such proof is made, the burden is cast on bankrupt to explain and disprove such intent.

4. BANKRUPTCY ⫞⟶384—EVIDENCE SHOWING NO RIGHT TO DISCHARGE THROUGH COMPOSITION.

Evidence held sufficient to show that bankrupt made a false oath to his schedule, and failed to keep books with intent to conceal his financial condition, which debarred him of the right to make a composition which would effect his discharge.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of Lewis Gottlieb, bankrupt. From an order confirming a composition, the Roxford Knitting Company appeals. Reversed.

Gottlieb was a merchant in a suburban town on Long Island. In the spring of 1918 he made a statement in writing to Roxford Company, "for the purpose of obtaining credit and inducing [it] to sell [him] merchandise," as the document signed by Gottlieb declares. This statement specified (as of January 1, 1918):

Total assets of........................................... $21,582.39
Of which merchandise on hand "at actual cost" accounted for.. 19,532.39
His only debts are given as—
On open accounts for merchandise, due or past due............. $5,628.00
And due a bank............................................. 4,000.00

Total ................................................ $9,628.00
His sales for 1917 are stated as........................... $33,763.32

---

⫞⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Roxford Company, after receipt of this statement, sold goods to Gottlieb, for which he has not paid.

Bankrupt testified that he personally took stock on January 1, 1918, and the $19,532.39 represented "actual cost prices." As to sales his evidence is that he had no books that would show "the gross amount of [his] sales," and further that he kept no books enabling anybody to "find out [his] financial condition." How under such a system he knew the amount of his 1917 sales with the accuracy of his financial statement remains unexplained. He did estimate his average sales for January, 1918, and, if that estimate is correct, he must have sold daily about twice as much, every day, including Sundays and holidays, of the year 1917, to reach $33,763.32.

On August 23, 1918 Gottlieb went into voluntary bankruptcy, and his schedules show:

Stock ............................................................. $22,532.39
With other assets (open accounts, machinery, etc.) amounting
to .............................................................. 1,213.23
                                                                 _____
    Total ........................................................ $23,745.62
His liabilities (all unsecured claims) are.................... $22,187.62

As to his stock at failure, he swore: "I merely guessed at it, but I thought it was worth it, at that time; but at actual cost it would have amounted to a great deal more." The increased indebtedness in August as compared to January he ascribed to "buying merchandise" from "different people," and who those people were appeared (as he said) in one of the books surrendered to his trustee. There is no testimony contradicting this, and we assume that the schedule statement of debt has been found substantially correct.

On or about December 24, 1918, Gottlieb offered his creditors a composition at 33⅓ per cent. of their claims. Roxford Company filed objections, alleging that the bankrupt had (1) failed to keep books with intent to conceal, etc.; (2) obtained property upon a materially false statement; and (3) made a false oath when he stated his merchandise in his schedules.

A commissioner heard evidence, and reported as to the first objection that there was a failure to keep books, but such failure "was not due to any deliberate intent to conceal financial condition," although concealment was "the obvious result of the system of bookkeeping" adopted. The other objections he overruled; the District Court adopted the report, and approved the composition.

From the order accordingly entered, the objecting creditor appealed, and in this court certain of the other creditors and the trustee appeared and moved to dismiss the appeal, on the ground that neither they nor any other creditor had been cited to appear herein.

Archibald Palmer, of New York City, for moving creditors, etc.

Walter S. Hilborn, of New York City, for objecting creditor appellant.

Frederick H. Sanborn, of New York City, for bankrupt.

Before WARD, ROGERS and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The motion to dismiss is based on Field v. Wolf, 120 Fed. 815, 57 C. C. A. 326. The appeal record in that case shows an objection filed to a composition, alleging that it was not for the "best interests of the creditors," because (in substance) the bankrupts were well able to pay more than the offered amount, which fact they had concealed, or tried to, by a system of bookkeeping obnoxious to the statute.[1] The evidence

_____
1 The specification goes into much greater detail; but the above illustrates the pleader's theory, viz. that acts by the bankrupt that would bar a discharge, were reasons why the composition was not for the best interests of creditors. He did not assert that acts barring discharge are per se preventive of composition.

in that record is principally (but not wholly) devoted to showing that the bankrupts had or controlled far more property than they had offered to use in composition.

If the case cited holds no more than that, when the sole or principal ground of appeal is that the District Judge should have disapproved the composition because it was not large enough, the decision relates to something we are not now concerned with, and as to which we express no opinion. Whether a composition is in the interest of creditors, or was accepted out of sympathy and merely with a view to benefit the debtor, is a point not infrequently mooted under the British statute (e. g. Ex parte Hudson, 22 Ch. Div. 773), but hitherto not considered with us.

If, however, the Field decision be thought to lay down a general rule that consenting creditors, or a representative fraction of them, are necessary parties respondent in proceedings like the present, we are compelled to disagree. The ruling as so understood is opposed to our decision in Re Bay State Milling Co., 223 Fed. 778, 139 C. C. A. 598 (subsequently heard on the merits as Re Soloway, 234 Fed. 67, 148 C. C. A. 83). It is also at variance with the considered judgment of the Sixth Circuit in United States ex rel. Adler v. Hammond, 104 Fed. 862, 44 C. C. A. 229.

[2] We adhere to the doctrine that a confirmed composition, because it results in discharge, is the subject of appeal, as is a discharge. Further than that this case does not require a ruling. See In re McVoy Hardware Co., 200 Fed. 949, 119 C. C. A. 337; In re Brookstone, etc., Co., 239 Fed. 697, 152 C. C. A. 531; In re Graham & Sons, 252 Fed. 93, 164 C. C. A. 205.

The motion to dismiss is denied.

The evidence before us first compels belief in one important fact; it is baldly impossible that Gottlieb's financial statement, his schedules in bankruptcy and his testimony before the Commissioner can all be true. Using (for brevity's sake) approximate figures only, he says he had at the beginning of 1918, by actual count and at cost price, goods worth $19,000. His merchandise debts amounted to no more than $5,000, and his bank borrowings to $4,000. Thirty-three weeks later he had, by his sworn schedules, goods worth at least $22,000, and which had cost more than that, while he owed $22,000 for merchandise.

If he had sold no goods and paid for none during the year 1918, he bought on credit in that year $17,000 worth of merchandise; a figure by the bankrupt's own statement much too small. On the same hypothesis, of neither paying nor selling, but always buying on credit, he should have had at least $36,000 worth of goods on the day of bankruptcy. Of course, he admits some selling, but makes no effort worthy the name to show where the sale price went to. It does appear that in 1918 he paid off his bank indebtedness, and drew and expended for clerk hire and family expenses what he estimates at $104 a week or say $3,500. The only additional business expense mentioned is the rent of his store, which he ceased to pay (to his father-in-law) in April; its amount does not appear. If in 1918 he sold only at the rate he testified to for January, he would have taken in nearly $10,000 be-

fore bankruptcy; but, if he sold at the rate he gave for 1917, he would have similarly received over $21,000. Yet on the day of bankruptcy his cash as per schedules amounted to just $3.

The computations suggested by these figures, every one of them based on a statement of Gottlieb, are numerous and obvious, and each leads to palpable falsity under some one of the points above stated. It makes small difference for the purposes of this case whether such falsity is ultimately allocated to one heading or the other.

[3] In matters of discharge every objecting creditor starts out with the burden of proving that which he alleges. In re Miller, 212 Fed. 920, 129 C. C. A. 440. But when a set of facts is shown which unexplained would lead a reasonable man to believe the allegations of the objector, the bankrupt must explain, and a deficit in assets far less than that demonstrably existing here has been held sufficient for that purpose in this court. In re Loeb, 232 Fed. 601, 146 C. C. A. 559; In re Schultz, 250 Fed. 103, 162 C. C. A. 275. Nor is any creditor called upon to prove the substance of his objection beyond a reasonable doubt; a fair preponderance is enough. In re Garrity, 247 Fed. 311, 159 C. C. A. 404.

When such condemning facts are shown, the bankrupt's usual effort is in confession and avoidance; he admits the facts and seeks to avoid by ignorance, and thereby show lack of intent; for the objecting creditor has the burden, not only of showing facts in the ordinary sense of the word, but intent also. In re Garrison, 149 Fed. 178, 79 C. C. A. 126.

But intent, being pre-eminently a fact or phenomenon that (barring confession) can never be proved otherwise than by inference, the same facts—i. e. acts and documents—which cast the burden of explanation or evidence upon the bankrupt also cast on him the burden of disproving the intent of doing those things which are the inevitable and natural consequences of said acts and documents. This is well considered by Sanborn, J., in McKibbon v. Haskell, 198 Fed. 639, 117 C. C. A. 343, and was, we think, plainly indicated in our decision in Re Weston, 206 Fed. 281, 124 C. C. A. 345.

In this evidence, there is no confession in the sense that untruth is admitted; the court is asked to believe what the very statement disproves. The inference from such an attitude, leads to belief in intentional falsity. Nor is there any avoidance. Gottlieb had been in business 15 years, and said he was unable personally to keep proper books; but he was under no such obligation, and never tried; his clerk kept whatever was wanted. That, after so much experience, he could not indicate the results desired from his (unproduced) clerk's bookkeeping, is not even asserted. Indeed, his defense consists in saying (substantially), in response to his counsel's leading question, that he did not intend to deceive anybody. Illiteracy or ignorance of English, the usual avenues of palliation, are not even suggested.

[4] Assuming, what cannot be complained of by appellee, that his financial statement of January, 1918, is true, we hold that his oath to the schedules was an oath to a falsity, and further that he failed to keep books with intent to conceal his financial condition.

On these grounds, the order appealed from is reversed, with costs.