In the matter of Vincent T. DYNAK,
Bankrupt.
No. 76–56.

United States District Court
D. Massachusetts.
March 11, 1959.

———◆———

A. Abraham Benton, Springfield, Mass., for petitioner.

Vincent T. Dynak, pro se.

ALDRICH, District Judge.

This is an appeal by an objecting creditor from an order granting a discharge. The bankrupt in November, 1955, executed a voluntary petition, which was subsequently filed and allowed. The referee's original certificate was filed in this court December 6, 1956, and recommitted for amplification. In Matter of Dynak, D.C.D.Mass., 157 F. Supp. 349. A very full record has resulted. None of the amounts involved are large, but it seems to me that there is a rather important matter of principle. I approach the case, of course, from the standpoint that all findings of the referee must be accepted unless clearly erroneous. General Order 47, 11 U.S. C.A. following section 53. The only question is whether he was too complaisant towards the absence of books and records, and the presence of untrue and seemingly improbable testimony.

The following facts were either found by the referee, or admitted by the bankrupt. The bankrupt for some ten years had been a journeyman plumber. He maintained a set of books until June 1, 1955. By June 1st he had incurred in-

debtedness of some $2,700 to a plumbing concern, and was apparently "shut off." During June he incurred an equal indebtedness to the objecting creditor, another supplier, and when again shut off, went on to others. He was fully paid for these materials by his customers, but made no payments over. When in early October the objecting creditor suggested making an arrangement, the debtor said why should he bother, since he could go into bankruptcy and forget it.

After the first trustee examination the bankrupt was instructed to correct his books. Even as so remedied the referee found them "inadequate and incomplete." In addition to the fact that a number of jobs other than those specifically referred to in this opinion have never appeared, there are three items of particular importance. On the original creditor examination the bankrupt testified that he was owed $450 for materials by one Desjarlais, a personal friend. Thereafter the creditor summoned Desjarlais, who produced a receipted bill for $565 for materials and labor in the bankrupt's handwriting. The bankrupt then admitted the payment. The referee stated the omission was excusable by poor memory, and noted that the bankrupt readily admitted the payment. A ready admission under these circumstances was scarcely significant. It is to be noted that this payment was within a month of the execution of the petition, and within a week of the completion of the work, and was not an inconsequential amount for this

debtor. Secondly, there was no record of a receipt of $700 during the summer from one Tarka, or even of the fact the work was done. The bankrupt admitted the receipt when faced with a newspaper item, but offered no explanation for its omission. This, again, was a substantial matter. Thirdly, the bankrupt claimed to have paid $850 in cash during June to "subcontractors." He identified these payments as having been made to a master plumber, one John Steele.[1] He admitted he usually made such payments by check, but said Steele wanted cash. He had no bills, or receipts, from Steele, could not recall the jobs (although they were his own jobs, for which he was paid), did not know Steele's address, said he had never seen him, and that his only contact with him was through a man "in Connecticut." He could not identify the man in Connecticut. It would be highly charitable to term such an explanation satisfactory. For one to accept it, corroborated only by the fact that the bankrupt did sometimes legitimately employ subcontractors, would necessitate at least an earnest, impressive witness. Instead, the referee found him "very unimpressive." The referee concluded, however, that "the true story was told as best he could." [2]

On the subject of the books the referee, after saying he was satisfied they were inadequate, stated, "The question is whether a man of this type would be expected to make more detailed records." I am not at all sure, as a general proposition, that that is a question. The errors here were not merely

---

1. A journeyman cannot hire assistants, and if he cannot do a job himself he must employ a master plumber. In such event he receives only a commission on the materials used, although, seemingly, it remains his own job so far as the customer is concerned.

2. This tolerance also extended to the omission of the other jobs previously referred to even after the bankrupt was given opportunity to correct his books; testimony as to gambling losses, the existence of which had been denied in the petition; and false statements, allegedly in the interest of domestic tranquillity, about money taken by his wife.

over-simplification of details, or mathematical inexactness, but complete omission of substantial receipts. There was not even elementary compliance with the requirement, both state and federal, for records adequate for income tax purposes. The burden which is on the bankrupt to justify such lack of records is not met simply by testimony that he did not go to high school, or was having trouble with his wife. However, I do not reach that broader issue, and in introducing it the referee apparently lost sight of the fact that this bankrupt did know how to keep books, and had kept them "right along" until he found himself in trouble. The question was not whether he was the "type [who] would be expected to keep more detailed records," viz., whether general poor quality was excusable in his case, but whether a sudden deterioration was "justified under all the circumstances of the case." Bankruptcy Act, § 14, sub. c(2), 11 U.S.C.A. § 32, sub. c(2). A cessation of normal records about the time that a debtor may be thinking of bankruptcy requires particualr explanation. Sternburg v. M. Cohen & Co., 1 Cir., 254 F. 1. The referee's approach to this question erred either for the above-stated reason, or because he had what seems, perhaps, an over-all feeling that creditors cannot complain of failure to keep books unless they can show material injury thereby. I rule without hesitancy that no such burden is on creditors, and that on the record as a whole this bankrupt's obligation to keep elementary information, or to explain, has not been met. The provisions regulating discharge, including those affecting the burden of proof, are an important part of the Bankruptcy Act, and a bankrupt is not entitled to a discharge "unless he deserves it." Shanberg v. Saltzman, 1 Cir., 69 F.2d 262, 263. The referee's conclusion as to books and records is set aside, and he is instructed to deny the discharge.